Ronald G. WILKINS, Plaintiff–
Appellant,

v.

UNITED STATES of America; Richard
Danzig, Secretary of the Navy; Daniel
T. Oliver, Vice Admiral, Chief of Na-
val Personnel; Anderson B. Holderby,
Jr., Rear Admiral, Chief of Chaplains,
Defendants–Appellees.

No. 00–55117.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2001.

Filed Jan. 31, 2002.

Arthur A. Schulcz, Sr., Vienna, VA, for the plaintiff-appellant.

Patrick K. O'Toole, United States Attorney, Peter J. Sholl, Assistant United States Attorney, United States Attorney's Office, San Diego, CA, for the defendants-appellees.

Before: FERNANDEZ, KLEINFELD, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge.

This case arises from a military chaplain's claims that the Navy unconstitutionally administers its Chaplain Corps to prefer certain religious denominations. Ronald G. Wilkins, a non-liturgical protestant chaplain, filed a pro se complaint, requesting damages as well as declaratory and injunctive relief. The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), holding that it lacked subject matter jurisdiction due to (1) the exclusive jurisdiction of the Court of Federal Claims, *see* 28 U.S.C. § 1491; (2) the *Feres* doctrine, *see Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950); and (3) the exhaustion requirement. We affirm the dismissal of the claims for damages, but reverse the dismissal of the constitutional claims for declaratory and injunctive relief because the *Feres* bar does not extend to the claims for non-monetary relief.

## BACKGROUND[1]

██ Ronald Wilkins served in the United States Navy Chaplain Corps until his involuntary early retirement in 1995. He was, according to his complaint, a "Non–Liturgical chaplain endorsed by the Bible Churches Chaplaincy endorsing agency." The Navy categorizes chaplains as Roman Catholic, Liturgical, Non–Liturgical, and Other (e.g. Jewish, Muslim). Non–Liturgical denominations focus on sermonic content rather than formal rituals.

Upon his involuntary early retirement, Wilkins "filed written appeals to the Secretary of the Navy, the Judge Advocate General, the Chief of Chaplains and the Inspector General," contesting various forms of "religious repression, coercion and other illegal activities against the plaintiff and against his religious constituencies." He obtained no relief, and consequently filed suit in federal district court against the United States and various Navy officials.

In his federal complaint, Wilkins alleged that the Navy organizes the chaplaincy in an unconstitutional fashion. Specifically, he claimed that it maintains a so-called "Thirds Policy," under which chaplains in Roman Catholic, Liturgical, and Non–Liturgical/Other denominations were each guaranteed one-third of the chaplain corps positions. In his view, this allocation does not reflect the actual denominational composition of the service; Liturgical chaplains are, according to the complaint, proportionately three times as numerous as servicemembers of those religions.

Wilkins also alleged that the Chaplain Corps systematically prefers Liturgical chaplains over Non–Liturgical chaplains in its administration of assignments, evaluations, and the Selective Early Retirement system. According to Wilkins, the Navy policy and practice violated the Establishment Clause; the free exercise rights of Non–Liturgical sailors; the Equal Protection Clause; and the "Fifth Amendment guarantee of basic fairness." Wilkins also alleged that the Selective Early Retirement Board gave unconstitutional preference to minorities and women, violating the Equal Protection Clause.

On the basis of these charges, Wilkins sought a virtual smorgasbord of relief. He requested declaratory and injunctive relief to end the "sectarian spoils system," and to guarantee the free exercise rights of military personnel. He sought reinstatement (for himself and other unnamed Non–Liturgical chaplains), and a declara-

---

1. This factual background is based on the complaint; the facts alleged must be accepted as true, because the case was dismissed for lack of jurisdiction. *Saridakis v. United Airlines,* 166 F.3d 1272, 1276 & n. 4 (9th Cir. 1999).

tion that his involuntary early retirement was invalid and violative of due process. He also sought compensatory damages; changes to his records; a promotion; a new assignment; punitive and actual damages; monies to establish a new "Non–Liturgical watch-dog agency for the military chaplaincies;" various other forms of declaratory relief; and attorney's fees under the Equal Access to Justice Act.

The district court granted the Navy's motion to dismiss the complaint. In its order, the court concluded that it did not have subject matter jurisdiction. Under the Tucker Act, 28 U.S.C. § 1346, Wilkins's claims for non-tort damages against the United States in excess of $10,000 were subject to the exclusive jurisdiction of the Court of Federal Claims. To the extent that Wilkins asserted tort claims, the district court concluded that they were barred by the *Feres* doctrine. Finally, the court determined that Wilkins's failure to exhaust his administrative remedies constituted an independent ground for dismissal of the suit.

On appeal, now represented by counsel, Wilkins argues that the *Feres* doctrine does not apply to his constitutional claims; that he falls within various exceptions to the general rule requiring exhaustion of administrative remedies; and that the court improperly construed his pro se complaint in an unduly narrow fashion.

## Standard of Review

■ We review de novo a district court's decision to dismiss for lack of subject matter jurisdiction. *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024 (9th Cir.2001). Whether the *Feres* doctrine applies to the facts in the record is reviewed de novo. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir.1997). On a dismissal for failure to exhaust nonjudicial remedies, the district court's under-

lying factual determinations are reviewed for clear error, and its application of substantive law is reviewed de novo. *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir.1988). We review the denial of leave to amend a complaint for abuse of discretion. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir.2000).

## Discussion

## I. Damages

The district court properly dismissed Wilkins's claims for damages. The claims for back pay and other non-tort damages, which were well in excess of $10,000, lie within the exclusive jurisdiction of the Court of Federal Claims. *See* 28 U.S.C. §§ 1346(a)(2); 1491(a)(1); *Glines v. Wade*, 586 F.2d 675, 681–82 (9th Cir.1978), *rev'd in part on other grounds sub nom. Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980). Wilkins concedes this point on appeal.

■ The district court also reasoned that Wilkins's tort claims were barred by the *Feres* doctrine. Although the United States is generally liable for tort damages under the Federal Tort Claims Act, 28 U.S.C. § 2674, it "is not liable ... for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. 153; *see generally Costo v. United States*, 248 F.3d 863, 868–69 (9th Cir.2001) (discussing cases in which soldiers were injured, and in which courts held that the *Feres* doctrine bars suit), *cert. denied*, — U.S. —, 122 S.Ct. 808, 151 L.Ed.2d 693 (2001).

■ Wilkins's position on his tort claims is slightly opaque. In his brief, he makes passing reference to district court error in dismissing his tort claims on *Feres* grounds, without distinguishing between

monetary and non-monetary relief. His only argument in the brief, however, relates to whether the *Feres* doctrine applies to "constitutional claims not seeking money damages." We therefore deem abandoned any argument with respect to money damages for tort claims, *see Pierce v. Multnomah County*, 76 F.3d 1032, 1037 n. 3 (9th Cir.1996), and address whether the *Feres* bar extends to Wilkins's constitutional claims for declaratory and injunctive relief.

## II. INJUNCTIVE AND DECLARATORY RELIEF

Wilkins also requested injunctive and declaratory relief for alleged constitutional violations.[2] These claims are not so easily dismissed. Specifically, he sought injunctive relief to redress the structural establishment violations that result in built-in preferences for Liturgical chaplains, to ensure sailors' free exercise of religion, to rescind his selective early retirement because it was discriminatory, and to restore him to active duty.

### A. COURT OF FEDERAL CLAIMS JURISDICTION

■ This case cannot be characterized simply as a military discharge case with a few constitutional claims thrown in for good measure. Although Wilkins sought money damages and reinstatement, his chief complaint is with the Navy Chaplain Corps's organization and its system of evaluation, assignment, promotion, and selection for early retirement.

■ The Court of Federal Claims has exclusive jurisdiction over non-tort claims against the United States in excess of $10,000. 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1). In addition, the court has jurisdiction to grant non-monetary relief "as

an incident of and collateral to any ... judgment." 28 U.S.C. § 1491(a)(2). Specifically, the statute reads as follows:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

Thus the court may grant injunctive relief when it is "associated with and subordinate to a monetary claim," but it has no jurisdiction over claims where the monetary claim is incidental to a claim for affirmative non-monetary relief. *McEniry v. United States*, 7 Cl.Ct. 622, 625 (1985) (dismissing servicemember's claim for reinstatement with back pay).

Although the United States paints Wilkins's claim as a military discharge case that has been dolled up with constitutional claims, this view overlooks the crux of Wilkins's case—a First Amendment challenge to the very structure of the Chaplain Corps. His significant constitutional claims go well beyond a mere personnel action. *See Denton v. Schlesinger*, 605 F.2d 484, 487–88 (9th Cir.1979). Nor can his claims be shoehorned into the statutory extension of the Court of Federal Claims jurisdiction "incident of and collateral to [a] judgment." 28 U.S.C. § 1491(a)(2). Broad-based declaratory and injunctive re-

**2.** On appeal, Wilkins does not pursue his requests for an injunction against promotion of liturgical chaplains to flag rank and for an order directing the Secretary of the Navy to take specific punitive actions against former Chiefs of Chaplains.

lief regarding Navy policies affecting the structure of the military chaplaincy can hardly be characterized as "collateral to" reinstatement or a money judgment for Wilkins. The Court of Claims, therefore, does not have jurisdiction over Wilkins's non-monetary claims.

## B. *FERES* DOCTRINE

■■■■ Wilkins's plea for declaratory and injunctive relief presents the narrow question of whether the *Feres* doctrine bars claims for non-monetary relief. Although the Supreme Court has not spoken directly to this issue, its *Feres* jurisprudence points to the conclusion that *Feres* applies only to money damages. To conclude otherwise would leave military personnel without judicial recourse to challenge unconstitutional policies.

Historically, both the Supreme Court and the lower courts have entertained such challenges. *See, e.g., Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (Free Exercise challenge to policy prohibiting wearing of yarmulke); *Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (Equal Protection challenge to male-only draft registration); *Brown v. Glines,* 444 U.S. at 354, 100 S.Ct. 594 (First Amendment challenge to restrictions of on-base petition circulation); *Holmes v. Cal. Army Nat'l Guard,* 124 F.3d 1126 (9th Cir.1997) (constitutional challenges to Don't Ask/ Don't Tell policy); *Watkins v. United States Army,* 875 F.2d 699 (9th Cir.1989) (estoppel claim challenging failure to reenlist known homosexual); *Gen. Media Communications v. Cohen,* 131 F.3d 273 (2d Cir.1997) (constitutional challenges to prohibition on sale of pornography); *Katcoff v. Marsh,* 755 F.2d 223 (2d Cir.1985) (taxpayer Establishment Clause challenge to military chaplaincy); *Hartmann v. Stone,* 68 F.3d 973 (6th Cir.1995) (constitutional

challenge to prohibition of religious practices in on-base child care); *Walden v. Bartlett,* 840 F.2d 771 (10th Cir.1988) (due process challenge to military prison discipline).

The most specific guidance comes from *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), where the Supreme Court explained that not all constitutional claims are foreclosed to military members: "our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes." *Chappell,* 462 U.S. at 304, 103 S.Ct. 2362 (quoting E. Warren, *The Bill of Rights and the Military,* 37 N.Y.U. L.Rev. 181, 188 (1962)). The Court stated unequivocally that it "has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." 462 U.S. at 304, 103 S.Ct. 2362. To the extent the breadth of this pronouncement was ambiguous, the Court clarified the scope of its holding four years later in the context of a *Bivens* action for damages: "As the citations immediately following that statement [in *Chappell*] suggest, it referred to redress designed to halt or prevent the constitutional violation rather than the award of money damages." *United States v. Stanley,* 483 U.S. 669, 683, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

Within this framework, the Supreme Court has reviewed constitutional challenges to military regulations; although the Court has articulated a broad policy of deferring to military authorities' promulgation of those regulations, it has never questioned these servicemembers' ability to bring the various suits. In *Goldman,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478, the Court considered a servicemember's First Amendment challenge to Air Force regulations prohibiting his wearing

a yarmulke. *Goldman* cited *Chappell* for the proposition that the review should be deferential, *id.* at 507, 106 S.Ct. 1310, but never addressed the question of whether the servicemember should have been barred by *Feres* from raising the claim in federal court.

Accordingly, Wilkins presents the type of constitutional challenge to military policy that has long been reviewed, albeit deferentially, by the lower courts. The D.C. Circuit succinctly explained the role of deference in military cases:

> Whether the deference due particular military determinations rises to the level of occasioning nonreviewability is a question that varies from case to case and turns on the degree to which the specific determinations are laden with discretion and the likelihood that judicial resolution will involve the courts in an inappropriate degree of supervision over primary military activities.

*Doe v. Sullivan,* 938 F.2d 1370, 1381 n. 16 (D.C.Cir.1991) (R.B. Ginsburg, J.) (quoting *Owens v. Brown,* 455 F.Supp. 291, 300 (D.D.C.1978)).

While the *Feres* doctrine has been extended to preclude judicial consideration in a number of damages contexts, *see Costo,* 248 F.3d at 869, such extension is both unwarranted and contrary to precedent in this context.

The Ninth Circuit has consistently entertained servicemembers' constitutional challenges to military policies on the merits. We have adopted, and frequently reaffirmed, the test of *Mindes v. Seaman,* 453 F.2d 197, 201–02 (5th Cir.1971), to determine whether we may consider a constitutional challenge to a particular military decision. *See, e.g., Christoffersen v. Wash. State Air Nat'l Guard,* 855 F.2d 1437, 1442 (9th Cir.1988).[3] For example, in *Pruitt v. Cheney,* 963 F.2d 1160, 1166 (9th Cir.1991) (as amended), we rejected the Army's argument that deference to the military should bar an equal protection challenge to a servicemember's discharge. Such deference was "best applied in the process of judging whether the reasons put forth on the record for the Army's discrimination against Pruitt are rationally related to any of the Army's permissible goals." *Id.* Similarly, in *Philips v. Perry,* 106 F.3d 1420, 1421, 1425–26 (9th Cir. 1997), we considered on the merits (and rejected) equal protection and First Amendment challenges to the military's "Don't Ask/Don't Tell" policy,[4] noting that we have repeatedly considered such challenges.

---

**3.** As modified by this Circuit, the *Mindes* test provides that:

> an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of [a recognized constitutional right] ... and (b) exhaustion of available intraservice remedies. If the plaintiff meets both prerequisites, the trial court must weigh four factors to determine whether review should be granted:
> (1) The nature and strength of the plaintiff's claim....
> (2) The potential injury to the plaintiff if review is refused.
> (3) The extent of interference with military functions.

> (4) The extent to which military discretion or expertise is involved.

*Christoffersen,* 855 F.2d at 1442 (italics and internal citations omitted, second ellipsis in *Christoffersen* ).

**4.** We were not alone in this approach. Five circuits considered similar constitutional challenges to the "Don't Ask/Don't Tell" policy. None found the claim barred by *Feres* or unreviewable in district court. *See Able v. United States,* 155 F.3d 628 (2d Cir.1998); *Richenberg v. Perry,* 97 F.3d 256 (8th Cir. 1996); *Thomasson v. Perry,* 80 F.3d 915 (4th Cir.1996); *Steffan v. Perry,* 41 F.3d 677 (D.C.Cir.1994) (en banc).

The Tenth Circuit, in considering a challenge similar to the one that Wilkins brings here, held that *Feres* and *Stanley* bar tort-like claims for damages, but not challenges to military policies asking for injunctive and declaratory relief. *See Walden v. Bartlett,* 840 F.2d 771, 775 (10th Cir.1988). Other circuits are in accord. *See, e.g., Jones v. N.Y. State Div. of Military & Naval Affairs,* 166 F.3d 45, 52 (2d Cir.1999) (upholding *Feres*-based dismissal of damages claims, but allowing claim for injunctive relief where "the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member"); *Adkins v. United States,* 68 F.3d 1317, 1323 (Fed.Cir.1995) (allowing challenge for failure to follow own procedures); *Emory v. Sec'y of Navy,* 819 F.2d 291, 294 (D.C.Cir.1987) (rejecting claim that equal protection challenge to promotion system was nonjusticiable); *Katcoff v. Marsh,* 755 F.2d 223, 231 (2d Cir.1985) (granting taxpayer standing to challenge constitutionality of Army's military chaplaincy).

### C. EXHAUSTION

The district court also held that Wilkins's claims were barred because he did not seek administrative relief before the Board for Correction of Naval Records ("BCNR"). The court noted that BCNR does not have authority to adjudicate claims founded solely on constitutional grounds, but rejected Wilkins's argument on that point because it had already found the constitutional claims barred by *Feres.* Our holding with respect to *Feres,* therefore, changes the landscape. We agree that Wilkins must exhaust any claims that the Board has competence to address, but we hold that Wilkins's constitutional claims for declaratory and injunctive relief are not subject to the exhaustion requirement. To conclude otherwise would put Wilkins in a Catch–22 position. Because the case

was filed pro se and dismissed at an early stage, the pleadings are not a model of clarity. But the essence of Wilkins's case is a broad constitutional challenge to the structure and policies of the military chaplaincy. Without a declaration on his constitutional claim, his challenge (and any relief requested) would be illusory.

Our decision is dictated by the rationale in *Glines:* "[w]ithout [a declaratory] judgment [Wilkins] would remain subject to the regulations after his reinstatement." 586 F.2d at 678. *See also Beller v. Middendorf,* 632 F.2d 788, 801 (9th Cir.1980) (interpreting *Glines* as holding that "exhaustion of BCNR remedies [is] unnecessary before challenging regulations principally on constitutional grounds").

We are not persuaded by the government's reliance on *Liu v. Waters,* 55 F.3d 421 (9th Cir.1995). *Liu* addressed a situation in which an immigration deportee alleged that procedural errors rose to the level of a due process violation—specifically, there, that petitioner had been deprived of a fair hearing through ineffective assistance of counsel. The court stated: "The key is to distinguish procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." 55 F.3d at 426. Whereas the Board of Immigration Appeals had "no jurisdiction to decide questions of the constitutionality of the immigration laws," it could "reopen cases to fix administratively correctable procedural errors, even when these errors are failures to follow due process." *Id.* Wilkins's constitutional claims do not fit within the *Liu* rubric.

Finally, we note that Wilkins alleges in the complaint that he "filed written appeals" through administrative channels and was met with retaliation instead of relief. At this early stage, these allega-

tions must be accepted at face value for purposes of evaluating exhaustion. Thus, beyond the general limits on the BCNR's authority, Wilkins has alleged facts that, if substantiated, might demonstrate that an appeal to military authority would be futile. *See Muhammad v. Sec'y of the Army,* 770 F.2d 1494, 1495 (9th Cir.1985).

## III. CONSTRUCTION OF COMPLAINT

Wilkins argues that the district court should have allowed him to address the Navy's *Feres* argument, which was raised for the first time in the government's reply brief on its motion to dismiss. This challenge is essentially moot, considering that the legal posture of the case has changed with respect to *Feres* and the remaining issues are significantly narrowed.

 We disagree, however, with Wilkins's argument that the district court was required to read in a claim under the Religious Freedom Restoration Act, 42 U.S.C. § 2000 bb. Unlike in *Pruitt,* 963 F.2d at 1164, where the complainant alleged constitutional violations but did not set forth an equal protection theory, there is no reason the district court should have divined a statutory Religious Freedom Restoration Act claim here.

We leave to the district court's sound discretion how to proceed on remand. We take no position on the merits of Wilkins's claims nor whether any claims will survive subsequent dismissal.

### CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of the damages claims and requests for an injunction against promotion of Liturgical chaplains to flag rank and for an order directing the Secretary of the Navy to take specific punitive actions against former Chiefs of Chaplains. We REVERSE the dismissal of the remaining claims for injunctive and declaratory relief and REMAND for further proceedings consistent with this opinion.

**AFFIRMED in part, REVERSED in part, and REMANDED.** The parties shall be responsible for their own costs on appeal.

FERNANDEZ, Circuit Judge, concurring:

I concur in Parts I, II A, II B and III of the majority opinion. I also concur in Part II C, but I concur in that part, and in the ultimate resolution of this case, solely because the district court dismissed the action under Rule 12(b) of the Federal Rules of Civil Procedure, and it is possible that Wilkins' harm was caused by Navy regulations and policies approved by naval authorities whose decisions the BCNR cannot review. But, as seems more likely from the tone of the complaint, the regulations and policies are fine in themselves, and Wilkins' alleged harm was caused by the actions of individuals, who were not properly following those regulations and policies. In that event, the BCNR could correct the effect that those abuses had upon Wilkins, even if they resulted in (or are alleged as) constitutional violations. *See Christoffersen v. Wash. State Air Nat'l Guard,* 855 F.2d 1437, 1442 (9th Cir.1988); *Muhammad v. Sec'y of Army,* 770 F.2d 1494, 1495–96 (9th Cir.1985); *see also Liu v. Waters,* 55 F.3d 421, 425–26 (9th Cir. 1995); *Rashtabadi v. INS,* 23 F.3d 1562, 1567 (9th Cir.1994). That cannot be decided from the face of the complaint and the limited materials before us.

If, as it turns out, the matter was within the jurisdiction of the BCNR, the case must be dismissed for failure to exhaust the remedies available there. In other words, Wilkins' failure to exhaust would eliminate any right he might have to reinstatement, and, because he would not then

be a member of the Service, he would have no standing to complain about alleged ongoing violations. In short, those violations, if any, could not affect him. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Cornett v. Donovan*, 51 F.3d 894, 897 (9th Cir.1995).

Only time will tell. Thus, I concur.