D.W. NELSON, Circuit Judge,
with whom NGUYEN, Circuit Judge, joins, concurring:
I concur. I agree that our caselaw bars family member tort claims which have their genesis in injuries a servicemember sustains in the course of her service. See Persons v. United States, 925 F.2d 292, 295-97 (9th Cir.1991); Monaco v. United States, 661 F.2d 129, 132-34 (9th Cir.1981).
I write separately because I wish to highlight how this case reveals the questionable validity of the Feres doctrine. Though we hinge our rejection of Ritchie’s claims, in part, on the supposed policy rationale that the judiciary should not intrude into military discipline, courts often review military decisions that contradict a military regulation. In these instances, we have held the military accountable to its own standards and its own representations. Yet, here, our Feres doctrine dooms any claims for compensation for the harms caused by the military’s failure to follow its own regulations governing pregnant servicewomen. Refusing to compensate a class of victims — servicewomen and their families — based on the fiction that judicial review in these cases will upend “military discipline” perpetuates a grave injustice. It is past time for the judiciary to reconsider its reasons for refusing compensation to servicemembers under the Federal Tort Claims Act (FTCA).
I believe that the third policy rationale underpinning the Feres doctrine, preventing judicial interference with “the military discipline structure,” Persons, 925 F.2d at 295, has no relevance in cases where the military contravenes its own regulations and procedures. This case in particular highlights how this “determinative” and “most persuasive” policy rationale, see Atkinson v. United States, 825 F.2d 202, 204 (9th Cir.1987); Schoenfeld v. Quamme, 492 F.3d 1016, 1019 (9th Cir.2007) (internal quotation marks omitted), has become a guise for denying a selected class — servicemembers — remedies for otherwise judicially-eognizable wrongs.
Of course, there is some sense in restricting judicial interference in discretionary military decision-making where the decisions are “inextricably intertwined with the conduct of the military mission.” United States v. Johnson, 481 U.S. 681, 691, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). Though, I would note this reasoning is not rooted in the common law tradition that allowed servicemembers to bring certain tort claims against their superior officers. See United States v. Stanley, 483 U.S. 669, 698-99, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (Brennan, J., dissenting) (“At common law, even military superiors received no exemption from the general rule that officials may be held accountable for their actions in damages in a civil court of law.”). Nor is the broad bar of Feres supported by the text of the FTCA, which explicitly excludes only “claim[s] arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.” 28 U.S.C. § 2680(j); Johnson, 481 U.S. at 692, 107 S.Ct. 2063 (Scalia, J., dissenting) (“The problem now, as then, is that Congress not only failed to provide such an exemption, but quite plainly excluded it.”). Unfortunately, the deferential reasoning of Feres has created an almost complete bar to servicemembers’ tort claims, regardless of whether the facts actually warrant judicial abstention. See Millang v. United States, 817 F.2d 533, 535 (9th Cir.1987) (per curiam). We have *880 described this inflexible and absolute bar as necessary to prevent “the type of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.” Id. at 535 (quoting United States v. Shearer, 473 U.S. 52, 59, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (emphasis in original)).
But that reasoning becomes a Action in a case such as this, which does not involve discretionary military decision-making and instead involves the military’s contravention of its own regulations and procedures. See Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 52 (2d Cir.1999); Murphy v. United States, 993 F.2d 871, 873 (Fed.Cir.1993); see also Watkins v. U.S. Army, 875 F.2d 699, 705-11 (9th Cir.1989) (en banc) (applying equitable estoppel to enjoin the U.S. Army from denying plaintiffs reenlistment on the basis of his homosexuality); Bledsoe v. Webb, 839 F.2d 1357, 1360 (9th Cir.1988) (“Indeed, courts often review cases in which military officials are alleged to have violated their own regulations.”). The Feres bar, then, prevents compensation for what would otherwise be judieially-reviewable acts in these cases. Cf. Wilkins v. United States, 279 F.3d 782, 784 (9th Cir.2002) (holding that “the Feres bar does not extend to the claims for non-monetary relief’).
Consider Ritchie’s factual allegations. The complaint specifically alleges that the military performeddhe required pregnancy profile for January, but then failed to follow the profile’s limited duty requirements, as well as the additional instructions of January’s doctor as the pregnancy became high risk. In Ritchie’s administrative claim for damages, he elaborates that January “was required to engage in physical exercise and other duties against the advice of her physician resulting in the loss of the pregnancy at twenty-two weeks.”
Of course, at some level, these alleged wrongful orders can be viewed as part of “the military discipline structure,” since January’s refusal to follow them would have been a subordinate’s refusal to carry out an order. Yet, this does not mean that the responsible superior officers’ decisions to disregard military policy and regulations amount to discretionary, nonjusticiable acts. See Sterling v. Constantin, 287 U.S. 378, 401, 53 S.Ct. 190, 77 L.Ed. 375 (1932) (“What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions.”). Quite the contrary, military decisions, carried out through the orders of military officers, that contravene military policies and regulations are judicially reviewable. See Wenger v. Monroe, 282 F.3d 1068, 1072 (9th Cir.2002). Moreover, the military’s policies and actions towards pregnant servicewomen are not discretionary, but rather, are clearly matters the judiciary has jurisdiction to consider. See, e.g., Crawford v. Cushman, 531 F.2d 1114 (2d Cir.1976) (invalidating on constitutional grounds the Marine Corps’ regulation which mandated the discharge of Marines for pregnancy).
Here, the relevant Army regulation, AR 40-501, Chapter 7-9, requires that pregnant soldiers have a “pregnancy profile,” which includes a mandatory “occupational health interview to assess risks to the Soldier and fetus.” The regulation specifically directs commanders to “counsel all female Soldiers as required by AR 600-8-24 or AR 635-200”; “consult with medical personnel as required”; and “establish!] liaison with the occupational health clinic and request[ ] site visits by the occupational health personnel if necessary to assess any work place hazards.” AR 40-501, Chapter 7 — 9(b)(3). The regulation then sets forth twelve specific limitations on the duties of pregnant soldiers during the *881 term of their pregnancy, including scheduled mandatory rest periods, adding additional restrictions as the gestation period progresses. Id. at 7-9(d). For instance, “[a]t 28 weeks of pregnancy, the Soldier must be provided a 15-minute rest period every 2 hours.” Id. Thus, when Ritchie alleges that “Officers, members, and/or employees of the United States Army” disregarded the pregnancy profile and the instructions of January’s doctor, Ritchie is alleging that the Army failed to follow its own policies regulating the treatment of pregnant women.
This case reveals the injustice caused by the Feres doctrine. Our jurisprudence allows us to consider claims challenging the military’s failure to follow its own mandatory regulations, but only when the plaintiff requests declaratory or injunctive relief. See Wilkins, 279 F.3d at 787; Wenger, 282 F.3d at 1072. But that relief is often meaningless. See Stanley, 483 U.S. at 690, 107 S.Ct. 3054 (Brennan, J., dissenting) (“An injunction, however, comes too late for those [soldiers] already injured; for these victims, it is damages or nothing.”) (internal quotation marks omitted). An injunction can never remedy the injuries here — January’s preterm labor and Gregory’s death. In fact, each time the. military fails to follow regulations that result in harm to the mother and fetus, the injured parties will have no recourse because a forward-looking remedy cannot make them whole. Our current jurisprudence, then, acknowledges that pregnant servicewomen have a right to have the military abide by its regulations restricting their duty to medically-set limits, but yet affords them no remedy at law to ensure compliance.
Pregnant women did not always have the right to serve in the Armed Forces; this right was hard-earned. See Exec. Order No. 10240, 16 Fed.Reg. 3689 (May 1, 1951) (giving the services permission to discharge a woman if she became pregnant, gave birth to a child, or became a parent by adoption or a stepparent); Crawford, 531 F.2d 1114. Efforts to exclude pregnant women from serving, and even to punish women for becoming pregnant, continue to this day. See Pregnant G.I.’s Could Be Punished, Associated Press, Dec. 19, 2009, available at http:// www.nytimes.com/2009/12/20/us/20general. html. The right a pregnant woman has to serve means little if her service requires she put her fetus’s health and well-being at risk. In refusing to recognize Ritchie’s tort claims, we are continuing the legal fiction that these alleged wrongs are part of the military’s discipline structure. To hold that these kinds of tortious acts against a pregnant servicewoman are per se judicially unreviewable because they are part of the military mission is to practice willful blindness at the expense of a woman’s livelihood and the life of her unborn child. I am resigned that the unfortunate cases applying the Feres doctrine dictate such an outcome, but I sincerely doubt that the conduct alleged here — orders contravening military regulations intended to protect pregnant servicewomen — warrant judicial deference of any kind. Where military conduct passes “so far beyond the bounds of human decency,” I do not believe that it can be considered a part of the military mission. Stanley, 483 U.S. at 709, 107 S.Ct. 3054 (O’Connor, J., concurring & dissenting). It is a judicial fallacy which we have created and which I hope will be overturned one day soon.