372 F.3d 1308
 Jane DOE, Plaintiff-Appellee,
v.
UNITED STATES, Donald H. Rumsfeld, Secretary of Defense, and Tricare Management Activity (formerly known as Office of Civilian Health and Medical Programs of the Uniformed Services), Defendants-Appellants.
 No. 03-1350.
 United States Court of Appeals, Federal Circuit.
 DECIDED: June 24, 2004.
 
 Rita V. Latsinova, Stoel Rives LLP, of Seattle, WA, argued for plaintiff-appellee. With her on the brief was Vanessa Soriano Power.
 August E. Flentje, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellants. With him on the brief were Peter D. Keisler, Assistant Attorney General; Gregory G. Katsas, Deputy Assistant Attorney General; and Robert M. Loeb, Attorney.
 Before MICHEL, BRYSON, and PROST, Circuit Judges.
 BRYSON, Circuit Judge.
 
 
 1
 Although the underlying question presented by this case is whether the government's ban on paying for certain kinds of abortions is unconstitutional, we do not reach the merits of that issue. Instead, we hold that we lack jurisdiction over the appeal from the district court's judgment, and we therefore transfer the case to the court with jurisdiction over the appeal, the United States Court of Appeals for the Ninth Circuit.
 
 
 2
 * Plaintiff Jane Doe, the wife of a member of the armed services, became pregnant in early 2002. In July 2002, she received a diagnosis that her fetus suffered from anencephaly, an abnormality that is invariably fatal, usually resulting in the death of the fetus either before or shortly after birth. After consulting with her physicians, Doe decided to terminate her pregnancy through abortion. She requested that TRICARE, the military health care program, fund the procedure through one of its contract health care providers.[1] When the health care provider requested authorization from TRICARE to perform the procedure, however, TRICARE declined to authorize payment, based on the statutory and regulatory prohibitions against paying for abortions unless the life of the mother is at risk, 10 U.S.C. § 1093(a) and 32 C.F.R. § 199.4(e)(2).
 
 
 3
 Shortly thereafter, Doe filed this action in the United States District Court for the Western District of Washington. In her complaint, she cited as the basis for the district court's jurisdiction both the general federal question statute, 28 U.S.C. § 1331, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2). She alleged that she had the "right to bring this action" pursuant to the Administrative Procedure Act, 5 U.S.C. § 701-06 ("APA"). On the merits, she alleged that the government's refusal to pay for her abortion violated the equal protection component of the due process clause of the Fifth Amendment and that it was arbitrary and capricious, in violation of the due process clause and section 10(e) of the APA, 5 U.S.C. § 706. For relief, she sought a declaration that the government's action was not in accordance with law and an order compelling the defendants to "cease withholding payment for [the] medical procedure and related charges."
 
 
 4
 The day the complaint was filed, the district court issued a temporary restraining order enjoining the defendants "from withholding payment for the procedure necessary for the termination of Plaintiff's pregnancy." By way of background, the court described anencephaly as a neural tube defect that causes a fetus to develop without a forebrain, cerebellum, or cranium. The district court explained that the condition is invariably fatal, that two-thirds of all anencephalic fetuses that are carried to term are born without a heartbeat, and that fewer than two percent survive for more than seven days. The lack of a cerebrum means that an anencephalic fetus will never attain consciousness.
 
 
 5
 Based largely on a decision of a different district court in a similar case, Britell v. United States, 204 F.Supp.2d 182 (D.Mass.2002), rev'd, 372 F.3d 1370, No. 03-128, 2004 WL 1403559 (Fed.Cir. June 24, 2004), the court concluded that Doe had made a showing of a strong likelihood of success on the merits of her claim. With respect to the issue of irreparable injury, the court noted that Doe had alleged that she could not afford to pay for the procedure to terminate her pregnancy and that she would be required to carry the fetus to term if injunctive relief were denied. Finding that Doe would be exposed to risks of physical and psychological injury from carrying an anencephalic fetus to term, the court concluded that she would suffer irreparable harm if she were denied injunctive relief.
 
 
 6
 The court converted its restraining order into a preliminary injunction to allow the government to take an immediate appeal. The government appealed to the Ninth Circuit, which denied the government's request for a stay pending disposition of the appeal. Accordingly, Doe obtained an abortion and the government paid for the procedure pursuant to the directive in the preliminary injunction.
 
 
 7
 Following the abortion, the government dismissed its appeal from the preliminary injunction and moved in the district court to dismiss the complaint.[2] In turn, Doe sought judgment in her favor on the pleadings. The district court denied the motion to dismiss and entered final judgment in Doe's favor, consisting of a declaratory judgment that "there is no rational justification for defendants' refusal to fund plaintiff's abortion of her anencephalic fetus," and that the statute and regulation that barred the government from funding the abortion violated Doe's rights under the Fifth Amendment and the APA. Doe v. United States, No. C02-1657Z (Feb. 20, 2003). From that final judgment, the government appealed to this court. Doe subsequently moved that the appeal be transferred to the Ninth Circuit on the ground that this court lacks appellate jurisdiction over the case. The government has opposed the motion to transfer, contending that this court has appellate jurisdiction because the jurisdiction of the district court was based in part on the Little Tucker Act, 28 U.S.C. § 1346(a)(2).
 
 II
 
 8
 This court's jurisdictional statute provides, in pertinent part, that the court "shall have exclusive jurisdiction ... of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title [the Little Tucker Act]." 28 U.S.C. § 1295(a). The question whether we have jurisdiction in this case therefore depends on whether the jurisdiction of the district court in this case was based, at least in part, on the Little Tucker Act. See United States v. Hohri, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).
 
 
 9
 In both the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), Congress has waived sovereign immunity for certain actions for monetary relief against the United States. United States v. Mitchell, 463 U.S. 206, 212-18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The pertinent portions of the Tucker Act and the Little Tucker Act waive sovereign immunity for claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); id. § 1346(a)(2). The Little Tucker Act permits an action to be brought in a district court, but only if a claim does not exceed $10,000 in amount; the Tucker Act contains no such monetary restriction but authorizes actions to be brought only in the Court of Federal Claims.
 
 
 10
 Congress has also waived sovereign immunity for cases encompassed within the judicial review provisions of the APA, 5 U.S.C. §§ 701-06. See Bowen v. Massachusetts, 487 U.S. 879, 891-92, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In order for a district court to have jurisdiction under the APA in a nonstatutory review action, however, the claim must be for "relief other than money damages," id. § 702, and there must be "no other adequate remedy in a court," id. § 704. Appeals from actions in which the district court's jurisdiction is based entirely on the APA are taken to the pertinent regional circuit, not to this court. The issue of appellate jurisdiction in this case therefore turns on whether the jurisdiction of the trial court is based, in whole or in part, on the Little Tucker Act, or whether the trial court's jurisdiction is based entirely on the APA.
 
 
 11
 In a case not involving the enforcement of contract rights or an unlawful exaction, the district court has jurisdiction under the Little Tucker Act only if the plaintiff's claim is for monetary relief, in an amount less than $10,000, attributable to a violation of the plaintiff's rights not sounding in tort. That is, the action must be to obtain "compensation by the Federal Government for the damage sustained." Eastport S.S. Corp. v. United States, 178 Ct.Cl. 599, 372 F.2d 1002, 1010 (1967). See Bowen, 487 U.S. at 906 n. 42, 108 S.Ct. 2722 (laws creating rights enforceable under the Tucker Act "attempt to compensate a particular class of persons for past injuries or labors"). The remedy that Doe sought from the district court, however, was injunctive and declaratory relief, not the payment of liquidated or unliquidated damages. In particular, she sought an injunction requiring TRICARE to authorize payment for the abortion and related services, and a declaration that the statutory and regulatory prohibition on paying for aborting anencephalic pregnancies was unlawful.
 
 
 12
 The Little Tucker Act does not authorize a court to grant prospective equitable relief, except in very narrow circumstances not at issue here. Lee v. Thornton, 420 U.S. 139, 140, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief."); Richardson v. Morris, 409 U.S. 464, 465-66, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973); Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 858-59 (Fed.Cir.1992). That limitation on the court's authority applies to district courts as well as the Court of Federal Claims because a district court, when exercising jurisdiction under the Little Tucker Act, in effect sits as the Court of Federal Claims, which does not have general equitable powers. See United States v. Sherwood, 312 U.S. 584, 589-91, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).
 
 III
 
 13
 In light of the principles set forth above, we hold that Doe's complaint was not based, in whole or in part, on the Little Tucker Act. Her claim was not one "for liquidated or unliquidated damages in [a case] not sounding in tort" within the meaning of the pertinent provision of the Little Tucker Act. Instead, she sought only an injunction requiring TRICARE to authorize payment for the abortion and related services, and a declaration that the statutory and regulatory prohibition on paying for aborting anencephalic pregnancies was unlawful. Congress did not waive sovereign immunity in the Little Tucker Act for such claims, and the Little Tucker Act therefore did not give the district court subject-matter jurisdiction over those claims.
 
 
 14
 This is not a case in which the plaintiff's claim for relief is simply a request for money damages disguised as a request for an order granting injunctive relief, or in which the grant of equitable relief would give the plaintiff nothing more than an award of damages. In such cases, we have held that the fact that the plaintiff has framed its complaint as a request for an injunction or a declaratory judgment as opposed to a request for damages does not require that the case be treated as arising under the APA rather than the Tucker Act. See Brazos Elec. Power Coop. v. United States, 144 F.3d 784, 787 (Fed.Cir.1998) (action may not be brought seeking equitable relief under the APA because "the only significant consequence of Brazos obtaining the `equitable relief' that it requests would be that it would obtain monetary damages from the federal government"). Accord Christopher Village, L.P. v. United States, 360 F.3d 1319 (Fed.Cir.2004); Consol. Edison Co. v. U.S. Dep't of Energy, 247 F.3d 1378 (Fed.Cir.2001). The regional circuits concur. See Eagle-Picher Indus., Inc. v. United States, 901 F.2d 1530, 1532 (10th Cir.1990) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States."); Amoco Prod. Co. v. Hodel, 815 F.2d 352, 362 (5th Cir.1987) (district court has jurisdiction under the Tucker Act when "injunctive and declaratory relief... does not have significant prospective effect or considerable value apart from determining that the government owes [plaintiff] money"); Warner v. Cox, 487 F.2d 1301, 1304 (5th Cir.1974) (district court has jurisdiction under the Tucker Act when the suit is "concerned [with nothing] but the payment of money — when, how much, and by whom it should be paid.").
 
 
 15
 The fact that the injunctive relief Doe sought would ultimately involve a transfer of money, i.e., a payment by the government to the medical service provider that would perform her abortion, did not bring her complaint under the Little Tucker Act; it is not enough that the injunctive relief sought by a plaintiff, if granted, would cause the defendant to expend money. See Bowen, 487 U.S. at 893, 900-01, 108 S.Ct. 2722; Nat'l Ctr. for Mfg. Scis. v. United States, 114 F.3d 196, 202 (Fed.Cir.1997); Katz v. Cisneros, 16 F.3d 1204, 1208-09 (Fed.Cir.1994); Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 796-97 (Fed.Cir.1993). That is particularly true in a case such as this one, in which the injunctive relief sought would require the government to provide a service (albeit through a service provider), rather than to pay money to the plaintiff. Injunctions against the government frequently involve an order for the government to provide services that require the government to expend money, either through the commitment of its own resources or by paying for the services to be provided by third parties. The fact that the claim involves services to which a monetary value can be attached does not mean that the dispute necessarily falls within the scope of the Little Tucker Act. What matters is whether the request for relief is, on its face or in substance, a request for money damages as opposed to equitable relief.
 
 
 16
 In this case, there was an important difference between the effect of granting the equitable relief sought in the complaint and the effect of granting relief in the form of a payment of money damages. Doe alleged that she was unable to afford the abortion, an allegation not contested by the government. Accordingly, the district court found that denial of the injunction would have forced Doe to carry the fetus to term. In so doing, she would have been exposed to what the district court found to be the irreparable psychological and physical harms attendant to carrying an anencephalic fetus to term.
 
 
 17
 Those harms would not have been avoided by an after-the-fact payment of money damages. Moreover, because the district court credited Doe's assertion that she was unable to afford the abortion, this was not a case in which the Little Tucker Act would have provided an adequate remedy on the ground that Doe could have paid for the abortion and then sought reimbursement from the government in an action for damages. Nor could Doe have requested a money judgment at the outset of the case to finance her abortion, since TRICARE provides no mechanism for prospective financing of anticipated medical procedures, and hence there would be no money-mandating statute or regulation on which to base such a judgment. See 32 C.F.R. § 199.7(f)(4) ("No CHAMPUS payment shall be made for otherwise authorized services or items not yet rendered or delivered to the beneficiary.").
 
 
 18
 Thus, this case is unlike the Brazos and Consolidated Edison cases cited above, in which injunctive relief would do no more than grant the same monetary compensation that would result from a grant of money damages, and in which the Tucker Act remedy was otherwise available and fully effective. Here, the complaint contained no request for money damages, and the request for injunctive relief was not equivalent to a request for money damages. Nor, in light of the manner in which events developed, did this case ever become one in which money damages were sought. Accordingly, the district court's jurisdiction over this case was not based in whole or in part on the Little Tucker Act. For that reason, this court lacks jurisdiction over the matter.
 
 IV
 
 19
 In asserting that the district court's jurisdiction was based in part on the Little Tucker Act, the government relies heavily on the fact that Doe cited the Little Tucker Act in her complaint as one of the grounds on which the district court allegedly had jurisdiction over her claim. It is true that although Doe recited that her "right to bring this action" was founded on the APA, Doe's complaint referred to the Little Tucker Act as one of the statutory bases for the district court's jurisdiction. The government seizes on the citation to the Little Tucker Act in Doe's complaint and argues that by virtue of her invocation of the Act, the jurisdiction of the district court was "based, in whole or in part on the Little Tucker Act," and this court therefore has exclusive jurisdiction over the appeal.
 
 
 20
 The fact that a party invokes the Little Tucker Act as a basis for district court jurisdiction does not mean that the court's jurisdiction is in fact based on that statute. As we noted above, in determining the existence and grounds for a court's jurisdiction we "look to the true nature of the action instead of merely relying on the plaintiff's characterization of the case." Katz v. Cisneros, 16 F.3d at 1207. Accord Roberts v. United States, 242 F.3d 1065, 1068 (Fed.Cir.2001); Nat. Ctr. for Mfg. Scis., 114 F.3d at 199. In this case, examination of the true nature of the action reveals that it was the general federal jurisdiction statute, 28 U.S.C. § 1331, that gave the district court subject-matter jurisdiction over the constitutional and APA claims, and that the court did not have subject-matter jurisdiction under the Little Tucker Act.
 
 
 21
 The Supreme Court's disposition of a similar question in United States v. Mottaz, 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986), is instructive. There, the plaintiff had invoked the Little Tucker Act as one of the grounds for the district court's jurisdiction, and the Supreme Court, reviewing a judgment of the Eighth Circuit, noted that both parties had at various times identified the Little Tucker Act "as providing a source of federal jurisdiction over [the plaintiff's] claims." Id. at 848, 106 S.Ct. 2224. The Court further observed that if the district court's jurisdiction rested on the Little Tucker Act, then in light of 28 U.S.C. § 1295(a)(2) the Eighth Circuit would have lacked jurisdiction over the appeal. 476 U.S. at 848-49 & n. 11, 106 S.Ct. 2224. The Court, however, looked beyond the parties' reference to the Little Tucker Act and concluded that the district court's jurisdiction was not based on that statute because the plaintiff "has not brought a case falling within the scope of the Tucker Act." Id. at 850, 106 S.Ct. 2224. The Court pointed out that the plaintiff was no longer asserting the Little Tucker Act as a basis for the district court's jurisdiction, and that "the case she has made, and the relief she seeks, do not fit within the scope of the Tucker Act." Id. The Court explained that the plaintiff was not seeking whatever compensation she was entitled to at the time the government allegedly took property that she allegedly had interests in. Rather, she was claiming that she still owned her interests in the property and was seeking to force the government to buy those interests. The Court stated that her request for payment for her present interests did not "represent[] damages for the Government's past acts, the essence of a Tucker Act claim for monetary relief." Id. at 851, 106 S.Ct. 2224. Accordingly, the Court concluded that Mottaz's claim was not based on the Little Tucker Act and that the Eighth Circuit therefore had jurisdiction over her appeal.
 
 
 22
 The same analysis applies here. Just as the Supreme Court in Mottaz found that the district court lacked jurisdiction under the Little Tucker Act, even though the plaintiff had invoked the Act as a basis for jurisdiction, we conclude that the fact that Doe invoked the Little Tucker Act in her complaint did not render the case one in which the district court's jurisdiction was based on that Act.
 
 
 23
 Relying on Gollehon Farming v. United States, 207 F.3d 1373 (Fed.Cir.2000), Banks v. Garrett, 901 F.2d 1084 (Fed.Cir.1990), and Bray v. United States, 785 F.2d 989 (Fed.Cir.1986), the government makes the related argument that "so long as the Little Tucker Act confers subject matter jurisdiction," the insufficiency of a claim on the merits will not deprive the district court of Little Tucker Act jurisdiction unless the claim is frivolous. While that principle is true, it has no application here because the district court lacked subject matter jurisdiction under the Little Tucker Act in this case.
 
 
 24
 In each of the cases cited by the government, the plaintiff sought money damages under the Little Tucker Act, and the court concluded that the plaintiff had failed to demonstrate a right to damages under "money-mandating" statutes (Gollehon and Banks), or had failed to establish that the claim had been filed in a timely manner (Bray). In each case, this court held that the plaintiff's claim for monetary relief had invoked the court's subject-matter jurisdiction under the Little Tucker Act, but had failed on other grounds. Those cases thus stand for the proposition that if the court has subject-matter jurisdiction under the Tucker Act, the fact that the complaint fails to state a claim or that the court may not entertain the claim for some other reason does not undermine this court's appellate jurisdiction. Those cases do not support the government's contention that Doe's reference to the Little Tucker Act in her complaint gave the district court subject-matter jurisdiction under that statute, because the Little Tucker Act does not give a district court subject-matter jurisdiction over a request for equitable relief such as Doe's request in this case. See Van Drasek v. Lehman, 762 F.2d 1065, 1068-69 (D.C.Cir.1985) (absent a claim for money damages, the district court lacks subject-matter jurisdiction under the Little Tucker Act and the Federal Circuit lacks appellate jurisdiction under 28 U.S.C. § 1295(a)).
 
 
 25
 Finally, the government argues that after the injunction was granted and Doe's abortion had been performed and paid for by the government pursuant to the injunction, the case became "nothing more than a traditional Little Tucker Act suit over the payment of money under a money-mandating statute." That observation, however, ignores a fundamental difference between this case after the injunction and a case such as Britell, in which both we and the First Circuit held that the district court had jurisdiction under the Little Tucker Act and that appellate jurisdiction therefore lay with this court.
 
 
 26
 Britell is similar to this case in that it involved a military dependent who sought to have the military dependents' medical care system pay for an abortion to terminate her anencephalic pregnancy. Despite the similarity in the facts, however, Britell differs procedurally from this case in an important respect. In Britell, the plaintiff obtained an abortion on her own and paid for it herself before filing suit against the government. See Britell v. United States, 318 F.3d 70 (1st Cir.2003) (transferring to this court the appeal from the district court's judgment in the Britell case). Accordingly, her lawsuit simply sought reimbursement of the costs of the abortion and the related medical services. Her action was therefore clearly and solely for money damages and thus fell squarely within the Little Tucker Act. In this case, by contrast, Doe from the outset sought injunctive relief, not money damages. She claimed, and the district court ruled, that the after-the-fact payment of money damages would not have been an adequate remedy in her case. She was not requesting reimbursement, but was requesting the provision of a service that she was unable to obtain on her own. While the government's payment of money to the TRICARE provider was required to ensure that Doe would receive that service, her request was nonetheless for equitable relief, not damages.
 
 
 27
 After the government provided Doe's abortion pursuant to the injunction, Doe had no further claim against the government for money damages. In the aftermath of the abortion, the government moved to dismiss the complaint, presumably to set the stage for an action to recover the expenses of the abortion from Doe, and Doe moved for judgment on the pleadings, presumably to obtain a judgment that she could invoke to resist such an action. Unlike Britell, however, this case never became an action against the government for money damages, and it thus never became an action under the Little Tucker Act.
 
 
 28
 The same analysis answers the government's argument that this case, when filed, was simply an "unripe" Little Tucker Act suit, which became "ripe" after the injunction was granted. If the district court had denied Doe's request for an injunction and she had been able to afford an abortion, she could have converted her claim into a Little Tucker Act claim by seeking reimbursement of the funds she had spent for the procedure. In that sense, events could be said to have resulted in her claim "ripening" into a Little Tucker Act claim. But that is not what happened. Instead, Doe sought only equitable relief, she obtained equitable relief to prevent the asserted legal injury from occurring, and as a result, she never needed to sue for damages.
 
 
 29
 For these reasons, this case was not one that was based on the Little Tucker Act at the outset, and it never became one through the passage of time or the unfolding of events. Because Doe's claim was not within the class of claims for which Congress waived sovereign immunity in 28 U.S.C. § 1346(a)(2), the jurisdiction of the district court was not "based, in whole or in part" on that statute, 28 U.S.C. § 1295(a). This court thus lacks appellate jurisdiction in the case.
 
 V
 
 30
 When this court lacks jurisdiction over an appeal, it is authorized by statute to transfer to the case to "any other court in which the action or appeal could have been brought at the time it was filed or noticed" if it is in the interest of justice to do so. 28 U.S.C. § 1631. Because we do not have jurisdiction over this appeal, and because the district court had jurisdiction based on Doe's constitutional and APA claims, this case presents a final judgment that is ready for review in the appropriate appellate tribunal — in this case, the United States Court of Appeals for the Ninth Circuit. Because we conclude that no purpose would be served by dismissing the appeal altogether — a course that even Doe does not urge upon us — we conclude that transfer of the appeal would be in the interest of justice. Accordingly, we direct that the appeal be transferred to the United States Court of Appeals for the Ninth Circuit.
 
 
 31
 
 TRANSFERRED.
 
 
 
 
 Notes:
 
 
 [1]
 In 1966, the Department of Defense established the Civilian Health and Medical Programs of the Uniformed Services ("CHAMPUS") to provide medical care for retired military personnel and dependents of active and retired military personnel. In 1995, the Department created the TRICARE program to supplement CHAMPUS by offering beneficiaries a health maintenance program and a preferred provider networkSee Schism v. United States, 316 F.3d 1259, 1270 (Fed.Cir.2002) (en banc).
 
 
 [2]
 The government argued that the case was not moot, even though Doe had had the abortion and the government had paid for it, because the question of the lawfulness of the prohibition against paying for an abortion of an anencephalic fetus would affect the government's right to obtain reimbursement for the costs of the procedure from Doe. Doe did not dispute the government's contention that the case was not moot