NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PAMELA BENNETT, JAMES BENNETT,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, UNITED STATES FEDERAL BUREAU OF INVESTIGATION- AS ONE OF THE AGENCIES OF THE UNITED STATES, MANDY D. HEXOM, ATTORNEY,  MICHAEL GARLAND, CLERK, CYNTHIA A. FREELAND, JUDGE, JAMES A JUDGE, ATTORNEY, JUDITH MCCONNELL, JUDGE, JACQUELINE STERN, JUDGE, BLAINE K. BOWMAN**
*Defendants-Appellees*

**JERED EDE, ATTORNEY, CIELO HOMEOWNERS ASSOCIATION, INC.,**
*Defendants*

---

2025-1171

---

Appeal from the United States District Court for the Southern District of California in No. 3:23-cv-01140-BAS-BLM, Judge Cynthia Bashant.

---

Decided:  April 9, 2026

---

PAMELA BENNETT, Rancho Santa Fe, CA, pro se.

JAMES BENNETT, Rancho Santa Fe, CA, pro se.

SOPHIA SHAMS, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee United States.  Also represented by THOMAS PULHAM, BRETT SHUMATE.

MATTHEW GREEN, Best Best & Krieger LLP, San Diego, CA, for defendants-appellees Blaine K. Bowman, Cynthia A. Freeland, Michael Garland, Judith McConnell, Jacqueline Stern.

MARK SCHAEFFER, Nemecek & Cole, Encino, CA, for defendant-appellee Mandy D. Hexom.

JAMES A. JUDGE, The Judge Law Firm, ALC, Irvine, CA, pro se.

————————————

PER CURIAM.

Pamela and James Bennett appeal two decisions of the U.S. District Court for the Southern District of California denying their motions for leave to file a Third Amended Complaint ("TAC") and for recusal of the judge presiding over their case.  For the reasons below, we dismiss for lack of jurisdiction.

## BACKGROUND

The Bennetts have brought a series of lawsuits in California state and federal courts challenging the 2012 foreclosure sale of their Southern California residence.  *See Bennett v. United States*, No. 3:23-cv-1140-BAS-BLM, 2024 WL 4930591, at *1 (S.D. Cal. Nov. 18, 2024); *Bennett v. Bank of Am., N.A.*, No. D072569, 2019 WL 1723402, at *1 (Cal. Ct. App. Apr. 18, 2019).

In the present suit, the Bennetts allege that "a consortium of attorneys and unlawful judicial participants worked together to violate the law in [their] prior proceedings." *Bennett*, 2024 WL 4930591, at *2 (cleaned up). Relevant to this appeal, the Bennetts filed a Second Amended Complaint, raising claims against a slew of defendants—including attorneys, judges, a state-court clerk, a homeowners association, and the United States—under one or more of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), 42 U.S.C. § 1983, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *Bennett*, 2024 WL 4930591, at *2; S.A. 149–241 (the Bennetts' Second Amended Complaint).[1]

The Appellees moved to dismiss the Bennetts' Second Amended Complaint. *Bennett*, 2024 WL 4930591, at *1. In response to the Appellees' motions to dismiss (and in lieu of timely filing opposition briefing), the Bennetts filed a document entitled "Third Amended Complaint," S.A. 242–339, and contended that this filing rendered the pending motions to dismiss moot, S.A. 340–341. Although the district court indicated that the TAC was improperly filed without leave of court or consent from the opposing parties, it nonetheless opted to "liberally construe[]" the Bennetts' filing as a motion for leave to amend the Second Amended Complaint. App'x 2.[2] The district court subsequently granted the Appellees' motions to dismiss, dismissed the homeowners association from the suit, and denied the Bennetts' motion for leave to amend. *Bennett*, 2024 WL 4930591, at *11. The Bennetts also filed a motion for recusal, which the district court denied. *Bennett v. United States*, No. 3:23-cv-01140-BAS-BLM, 2025 WL 745870,

---

[1]    "S.A." refers to the supplemental appendix filed by the United States.

[2]    "App'x" refers to the appendix filed by the Bennetts.

at *1 (S.D. Cal. Feb. 13, 2025).  The Bennetts timely appealed.

## DISCUSSION

The Bennetts appear to raise two main issues on appeal—that the district court erred: (1) in its treatment of their filed TAC as a motion for leave to amend the Second Amended Complaint; and (2) in denying their motion for recusal.[3]  Appellants' Br. 5–7.  We must, however, determine at the outset whether this court has jurisdiction to hear the Bennetts' appeal.  *See Corr v. Metro. Wash. Airports Auth.*, 702 F.3d 1334, 1336 (Fed. Cir. 2012).

For their claims against the United States, the Bennetts alleged jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).  S.A. 182.  On appeal, the Bennetts assert that jurisdiction properly lies with this court based on 28 U.S.C. § 1295.  Appellants' Br. 5.

This case poses murky jurisdictional questions, especially when considering the multiple parties involved.  This court does not have an independent basis for jurisdiction over the causes of action the Bennetts assert against Appellees other than the United States.  *See* 28 U.S.C. § 1295.  Thus, this court's ability to hear any aspect of the present appeal rises and falls with the Bennetts' Little Tucker Act claims.

I

The principal statutory provision governing this court's jurisdiction provides, in relevant part, that the court "shall

---

[3]     The Bennetts do not challenge whether the district court properly dismissed the Second Amended Complaint in their opening brief.  Thus, that question is not presented on appeal. *Customedia Techs., LLC v. Dish Network Corp.*, 941 F.3d 1174, 1175 (Fed. Cir. 2019); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017).

have exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on" the Little Tucker Act.  28 U.S.C. § 1295(a)(2).  "The question [of] whether we have jurisdiction in this case therefore depends on whether the jurisdiction of the district court in this case was based, at least in part, on the Little Tucker Act."  *Doe v. United States*, 372 F.3d 1308, 1311–12 (Fed. Cir. 2004).

"The pertinent portions of the . . . Little Tucker Act waive sovereign immunity for claims 'founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.'"  *Id.* at 1312 (citing 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1346(a)(2)).  Under the Little Tucker Act, an action may be brought in a district court if the claim does not exceed $10,000 in amount.  28 U.S.C. § 1346(a)(2).

Further, a Little Tucker Act plaintiff must "identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages."  *Holmes v. United States*, 657 F.3d 1303, 1310 (Fed. Cir. 2011) (cleaned up).[4]  "[A] court must consider whether the source of substantive law can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."  *Wopsock v. Natchees*,

---

[4]    Because "[t]he Little Tucker Act follows the same rules as its bigger sibling, the Tucker Act, which assigns jurisdiction exclusively to the Court of Federal Claims regardless of the monetary amount claimed[,] . . . [t]his opinion . . . discusses jurisdictional decisions under both statutes interchangeably." *Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1347 n.7 (Fed. Cir. 2020) (cleaned up).

454 F.3d 1327, 1331 (Fed. Cir. 2006) (cleaned up).  In assessing jurisdiction, "all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

The question of "whether a statute [or regulation] can fairly be interpreted as money-mandating is one that directly bears on the issue of jurisdiction." *Wopsock*, 454 F.3d at 1331.  If the court determines that the source of substantive law is not "money-mandating," the court must dismiss the claim for lack of jurisdiction because "the absence of a money-mandating source [is] fatal to the court's jurisdiction under the [Little] Tucker Act." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc in relevant part).

For Little Tucker Act jurisdiction over breach-of-contract claims, "[a]s a general rule . . . the government consents to be sued only by those with whom it has privity of contract." *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1294 (Fed. Cir. 2022).  "To recover against the government for an alleged breach of contract, there must be, in the first place, a binding agreement." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003).  A binding agreement requires "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Id.* The "threshold condition" is "an objective manifestation of voluntary, mutual assent." *Id.*  This requires a "plaintiff [to] show, by objective evidence, the existence of an offer and a reciprocal acceptance." *Id.*  An implied-in-fact contract carries the same requirements but is one "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding

circumstances, their tacit understanding." *Fairholme Funds*, 26 F.4th at 1293 (cleaned up).

## II

The Bennetts' first and second causes of action set forth their claims against the United States. Neither presents a "source" of law that "as alleged and pleaded" is "money-mandating." *Fisher*, 402 F.3d at 1173. And because the "absence of a money-mandating source [is] fatal to the court's jurisdiction under the [Little] Tucker Act," this court *must* dismiss for lack of jurisdiction. *Id.*[5]

The Bennetts' first cause of action alleged that the Federal Bureau of Investigation ("FBI") breached a duty to investigate the Bennetts' RICO allegations. S.A. 208. The Bennetts posit that a "fiduciary" duty to investigate arises from 28 C.F.R. § 0.85(a), which lays out the general functions of the FBI Director. S.A. 209. The Bennetts appear to further allege that they entered an "Oral Implied in Fact Contract" with the FBI by way of a *Los Angeles Times* article that, as the Bennetts present it, stated:

> The FBI, in the wake of bribery convictions of two ex-judges and a prominent attorney, announced this week that it has instituted a hotline for people in San Diego to report allegations of governmental corruption.
>
> Robert Walsh, special agent in charge of the FBI office, said the FBI will investigate all reports of corruption in local, state or federal government.

S.A. 213; *see also* S.A. 211 (quoting the same).

---

[5]    Although we treat the Bennetts' Second Amended Complaint as the operative pleading, our analysis and conclusion would be unchanged if we were to instead treat the TAC as the operative pleading.

The Bennetts allege that an FBI agent's authority to enter an implied-in-fact contract arises from 28 C.F.R. § 0.85(a). S.A. 209. As relevant here, the Bennetts contend that Agent Walsh's statement that the FBI will investigate reports of corruption, taken together with the corruption they reported, converted his "offer" into a "bilateral contract," with the FBI becoming "obligated as a fiduciary under the offer and acceptance as well as 28 C.F.R. § 0.85(a)." S.A. 211.

The Bennetts' second cause of action sets forth a separate breach-of-contract claim premised entirely on the same *Los Angeles Times* article discussed above. S.A. 213. The Bennetts again allege that the article constituted an offer, which they accepted when they reported alleged RICO and "unlawful debt collection actions." S.A. 213.

For each cause of action, the Bennetts allege damages in the amount of "$400 to $9,000 to be proven." S.A. 213, 215; *see* 28 U.S.C. § 1346(a)(2) (setting forth that, under the Little Tucker Act, an action may be brought in a district court if the claim does not exceed $10,000 in amount).

A

We first address whether 28 C.F.R. § 0.85(a) is, on its own, a money-mandating regulation. It takes little effort to see that it is not. The regulation merely sets forth the general functions of the Director of the FBI—namely, "investigat[ing] violations of the laws." 28 C.F.R. § 0.85(a). Nothing in this provision can "fairly be interpreted as *mandating* compensation by the federal government." *Wopsock*, 454 F.3d at 1332 (emphasis added). As for the alleged "fiduciary duty" arising from this regulation, Little Tucker Act jurisdiction exists over claims alleging breach of a fiduciary duty that the government "specifically accepts by statute or regulation," or that are "grounded in a contractually based obligation," *Fairholme Funds*, 26 F.4th at 1296 (cleaned up). There is no indication of specific acceptance of a fiduciary duty in this regulation.

## B

The Bennetts' breach-of-contract allegations similarly fail to provide any indication of the existence of a valid express or implied-in-fact contract that could be construed as a money-mandating source of law.

It is entirely unreasonable to say that a mutuality of intent to contract exists based upon an article stating that the FBI has established a hotline and "will investigate all reports of corruption." S.A. 213. Nor can it be said that there was unambiguous offer and acceptance. Indeed, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Chattler v. United States*, 632 F.3d 1324, 1130 (Fed. Cir. 2011) (cleaned up). There is no evidence in the record—nor do common-sense or well-established contract principles justify—that this article clearly constitutes an offer. There is also an unambiguous *lack* of consideration. Moreover, Agent Walsh could not have had actual authority to bind the United States in contract under 28 C.F.R. § 0.85(a), as the Bennetts allege. That regulation, by its plain language, applies to the *Director* of the FBI—which Agent Walsh is not—and does not indicate a contract-forming authority conferred upon all FBI agents.

Here, there is no "source of substantive law that can fairly be interpreted as mandating compensation." *Wopsock,* 454 F.3d at 1333. Nor is there indication of a valid contract with the United States, express or implied, that would provide jurisdiction under the Little Tucker Act. *See Fairholme Funds*, 26 F.4th at 1293. Under the allegations presented, "this case was not one that was based on the Little Tucker Act at the outset . . . . [and] the jurisdiction of the district court was not based, in whole or in part, on" 28 U.S.C. § 1346(a)(2). *Doe*, 372 F.3d at 1317 (cleaned up). Consequently, "[t]his court . . . lacks appellate jurisdiction in the case." *Id.*

CONCLUSION

We have determined that this court lacks jurisdiction over this appeal.  For the foregoing reasons, we dismiss.

**DISMISSED**

COSTS

No costs.