**Stephen CARROLL, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 04–750C.**

United States Court of Federal Claims.

July 29, 2005.

Stephen G. DeNigris, Washington, D.C., for plaintiff.

Richard Schroeder, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, for the United States. With him on briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director.

## OPINION

BRUGGINK, Judge.

This is an action brought under the Back Pay Act. Plaintiffs are police officers employed by the U.S. Mint and the Bureau of Engraving and Printing at regional facilities outside of Washington D.C. Plaintiffs allege that their base pay in their regional positions is lower than the pay for identical work performed by their counterparts in Washington D.C. They seek an order directing that their salaries be conformed to those of corresponding positions in Washington D.C. They also seek monetary relief in the form of back pay to compensate for previous differences in

salary. Before the court is defendant's motion to dismiss for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

The matter is fully briefed. Oral argument was held July 19, 2005. For the reasons set out below, the court grants defendant's motion to dismiss for lack of jurisdiction.

## BACKGROUND [1]

Plaintiffs are employed as police officers by the U.S. Department of the Treasury working at either the U.S. Bureau of Engraving and Printing ("BEP"), Western Currency Facility in Fort Worth, Texas, or at U.S. Mint facilities located in Philadelphia, Pennsylvania; Fort Knox, Kentucky; Denver, Colorado; or San Francisco, California. These plaintiffs, along with their counterparts in Washington D.C., are all police officers within the 0083 series designation.[2] The series spans a number of pay grades, beginning at General Service Schedule ("GS") level seven.

Within the 0083 series, however, the Treasury utilized two different pay scales for police officers depending on whether or not they worked at facilities located inside or outside Washington D.C.[3] These pay scales—referred to as "TW" for police officers employed at the Washington D.C. facility and "TR" for those employed outside of Washington D.C.—set salaries for police officers, sergeants, lieutenants, captains, and inspectors at both the Mint and the BEP. Therefore, even within the same GS pay grade, two pay scales were in place. There could, for example, be a GS-9 (TR) and a GS-9 (TW). A 1999 letter from the Department of the Treasury to the National Finance Center requesting payroll updates implementing the TW pay scale, indicated that the Office of Personnel Management ("OPM") had approved the TW pay scale.

---

1. Unless otherwise indicated, the factual allegations are drawn from the complaint and are assumed to be correct for purposes of ruling on defendant's motion to dismiss for lack of jurisdiction.

2. This fact was represented by plaintiffs' counsel during oral argument.

3. During oral argument, the parties indicated that the distinction ended in 2002.

Plaintiffs allege that, for a given position, the TW scale provided roughly a 7% to 9% higher base salary than the TR scale despite the substantial similarities between the duties and responsibilities of D.C. and non-D.C. positions. Officers at all facilities receive the same training at the Federal Law Enforcement Training Center in Glynco, GA. All officers are subject to the same agency rules and regulations, serve under the same command structure, and answer to the same administrative directors.[4]

Plaintiffs believe the substantial similarity between police officer positions paid according to the TR scale and positions paid according to the TW scale made the existence of distinct pay scales unlawful in light of 5 U.S.C. § 5378 (2000). Plaintiffs further claim that, under the Back Pay Act, 5 U.S.C. § 5596 ("BPA"), they are entitled to the differences between their base salary and that set by the TW scale over all previous periods of employment.

## DISCUSSION

### I. Identification of a Money–Mandating Statute Conferring Jurisdiction

■ The Tucker Act is this court's primary jurisdictional statute. It states in relevant part:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2000). By itself, this statute "does not create any substantive right enforceable against the United States

for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Instead, the Tucker Act creates a cause of action against the United States when another statute, regulation, or the Constitution " 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *Testan*, 424 U.S. at 402, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)); *see also Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961. Accordingly, plaintiffs must identify a statute which "can fairly be interpreted" as mandating compensation by the United States.[5]

■ Plaintiffs' brief cited the Federal Circuit's opinion in *Fisher v. United States*, 364 F.3d 1372 (Fed.Cir.2004) ("*Fisher I*") for the proposition that the Supreme Court changed the test for whether a statute is money-mandating when it decided *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). Subsequent to plaintiffs' filing, however, the Federal Circuit vacated *Fisher I* after re-hearing *en banc*. *See Fisher v. United States*, 402 F.3d 1167 (Fed.Cir.2005) ("*Fisher II*"). It is now clear that a plaintiff has to make more than a non-frivolous allegation that a statute is money-mandating to state a valid Tucker Act basis of jurisdiction. *See Contreras v. United States*, 64 Fed.Cl. 583, 588 (2005).

What is not clear after *Fisher II* is the exact formulation of the Tucker Act jurisdictional test. The issue is whether requiring "a fair inference" that a statute is "reasonably amenable to the reading that it mandates a right of recovery in damages," as described in *White Mountain*, 537 U.S. at 473, 123 S.Ct. 1126, is a lower jurisdictional standard than the previous requirement that

---

4. Defendant alleges that officers under the TR scale are eligible to receive additional compensation in the form of locality pay, whereas officers under the TW scale could not. For support, defendant refers to the same 1999 letter from the Department of the Treasury to the National Finance Center which states in its request for pay scale revision: "Do Not Apply Locality–Adjusted Rate." We do not rely on this assertion in ruling on defendant's motion to dismiss.

5. Furthermore, "Because the Tucker Act supplies a waiver of immunity for claims of this nature, the [alleged money-mandating statute] need not provide a second waiver of sovereign immunity, [or] ... be construed in the manner appropriate to waivers of sovereign immunity." *Mitchell*, 463 U.S. at 218–19, 103 S.Ct. 2961.

a statute "can fairly be interpreted as mandating compensation ... for the damage sustained," as stated in *Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961. As observed by the Federal Circuit in *Fisher II*, "Whether *White Mountain* alters the *Mitchell* test, as suggested by the dissent in *White Mountain*, and whether the new test is less stringent in some respects or is the same, as suggested by the concurrence, is less than clear. Future opinions by the Supreme Court may clarify all this." 402 F.3d at 1174. In this case, however, the lack of clarity is of little consequence. Under either approach, the statutes identified by the plaintiffs are clearly not money-mandating.

*A. The Back Pay Act, 5 U.S.C. § 5596*

▆ We first address plaintiffs' argument that the BPA is a money-mandating statute and, therefore, a claim for back pay under the statute establishes Tucker Act jurisdiction. The BPA states:

An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the *withdrawal* or *reduction* of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period ....

§ 5596(b)(1) (emphasis added).

Although the BPA has generally been described as a money-mandating provision, *see Bowen v. Massachusetts*, 487 U.S. 879, 907 n. 42, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), it is also true that it "is merely derivative in application; it is not itself a jurisdictional statute." *United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983); *see also Contreras*, 64 Fed.Cl. at 592 n. 9 (discussing *Connolly*). The BPA only mandates the payment of money when a plaintiff identifies an "applicable law, rule, regulation, or collective bargaining agreement" which has been violated, leading to an reduction in pay. § 5596(b)(1); *Worthington v. United States*, 168 F.3d 24, 26 (Fed.Cir.1999) (discussing *Connolly*, the court stated: "The Back Pay Act is such a 'money-mandating' statute when based on violations of statutes or regulations covered by the Tucker Act."). In sum, the BPA, by itself, cannot be used as an exclusive basis for Tucker Act jurisdiction. There must be another legal provision, or agency decision, indicating that the pay differential was improper. That has not occurred here, and we have no independent judgement to make such a determination.

▆ Furthermore, recovery under the BPA requires plaintiffs to have previously suffered a "withdrawal or reduction" in pay. § 5596(b)(1). Plaintiffs have not alleged that their basic pay rate was reduced. Rather they allege that they are entitled to a pay increase to match their counterparts in Washington D.C. Alleging the performance of duties warranting or justifying higher pay than that previously received does not state a valid claim under the BPA. As explained by the Supreme Court:

[A] federal employee is entitled to receive only the salary of the position to which he was appointed, even though he may have performed the duties of another position or claims that he should have been placed in a higher grade. Congress did not override this rule, or depart from it, with its enactment of the Back Pay Act.

*Testan*, 424 U.S. at 406, 96 S.Ct. 948; *see also Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961 (It is an " 'established rule that one is not entitled to the benefit of a position until he has been appointed to it ....' " (quoting *Testan*, 424 U.S. at 402, 96 S.Ct. 948, regarding wrongful classifications)). Accordingly, because plaintiffs' pay was not reduced, their claims do not fall under the BPA, regardless

of whether the Secretary of the Treasury violated the terms of the Treasury pay statute, 5 U.S.C. § 5378.

### B. 5 U.S.C. § 5378 Does Not Provide a Basis of Jurisdiction

■ The remaining question is whether the Treasury pay statute, § 5378(a), is money-mandating, independent of the BPA. That provision states, in relevant part:

> The Secretary of the Department of the Treasury, or his designee, *in his sole discretion* shall fix the rates of basic pay for positions within the police forces of the United States Mint and the Bureau of Engraving and Printing *without regard to the pay provisions of title 5,* United States Code, except that no entry-level police officer shall receive basic pay for a calendar year that is less than the basic rate of pay for General Schedule GS–7 and no executive security official shall receive basic compensation for a calendar year that exceeds the basic rate of pay for General Schedule GS–15.

§ 5378(a) (emphasis added).

This statute is not money-mandating with respect to plaintiffs' claims. Section 5378(a) does not mandate the Secretary to implement a single, locale-independent, pay scale. Nor, for that matter, does it implement any other form of pay-comparability. Instead, it grants the Secretary wide discretion to set pay rates. It only limits this discretion by setting a lower (GS–7) and upper (GS–15) bound to the range of salaries the Secretary can implement.[6] Plaintiffs have not argued that they were paid less than the base salary of a GS–7. Accordingly, no explicit provision of the statute has been violated.

To the extent that plaintiffs' real argument is that it was an abuse of discretion on the part of the Secretary to implement differing pay scales within the same pay grade, that claim would also be outside the court's jurisdiction. We have no general federal question jurisdiction, *see* 28 U.S.C. § 1331, nor the

right generally to review final agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (2000) ("APA"). Conceding the latter point, plaintiffs' counsel at oral argument suggested that we transfer plaintiffs' claims to district court. We decline to do so. Section 1631 of Title 28 requires not only that the transferor court not have jurisdiction but that the transferee court have jurisdiction. The parties represented at oral argument that the Treasury abandoned the practice of pay differentials in 2002. The APA, however, only contemplates declaratory or injunctive relief, not back pay. *See* § 702 (stating that an "action in a court of the United States *seeking relief other than money damages* ... shall not be dismissed nor relief therein be denied on the ground that it is against the United States ...," thereby indicating that the APA does not waive sovereign immunity with respect to monetary claims (emphasis added)). While the district court may have had a role to play at some point in the past, the issue of declaratory or injunctive relief would now appear to be moot.

### II. The Non–Appropriated Funds Instrumentality Doctrine as a Jurisdictional Bar to the Employees of the United States Mint

Defendant has moved, in the alternative, to dismiss plaintiffs employed by the Mint. Defendant contends that, because the Mint is a non-appropriated funds instrumentality ("NAFI"), *see AINS v. United States,* 365 F.3d 1333, 1344–45 (Fed.Cir.2004), the United States has never waived sovereign immunity with respect to the actions of the organization.[7] Although plaintiffs have conceded the point, we are reluctant to dismiss on that basis.

The fact that a government entity is a NAFI does not, per se, preclude this court from assuming jurisdiction over claims arising from the actions of that entity. Rather, the court first must enquire whether the claim is founded upon the Constitution, a

---

6. During oral argument, plaintiffs' counsel indicated that an effort to challenge the pay scheme before the Office of Personnel Management was rejected. OPM suggested referral of the matter to the Secretary of the Treasury.

7. See *AINS* for the Federal Circuit's four-part test. 365 F.3d at 1342–43.

contract made with the United States, or a federal statute. It is true that claims against the United States founded upon contracts with NAFIs are generally barred: "the government has never waived its sovereign immunity to allow private parties to bring breach of contract claims against NAFIs. As a result, the Tucker Act does not provide the Court of Federal Claims with subject matter jurisdiction to hear suits against NAFIs." *AINS*, 365 F.3d at 1336. *See also Furash & Co. v. United States*, 252 F.3d 1336, 1339 (Fed.Cir.2001) (noting that the sole exceptions are listed in the Tucker Act itself: contracts with "the military post exchanges and the exchange councils of the National Aeronautics and Space Administration"). Takings claims, on the other hand, are founded upon the Constitution, and are properly brought in this court even if the taking was the act of a NAFI. *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1368 (Fed.Cir.2005) (" 'If there is a taking, the claim is "founded upon the Constitution" and within the jurisdiction of the Court of Claims ....' " (quoting *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946))).

With respect to claims founded upon a "money-mandating" statute, the Federal Circuit has indicated that the action can proceed against the United States even if based on the actions of a NAFI, if the statute "make[s] the United States liable for the actions of the NAFI[ ]." *Lion Raisins, Inc.*, 416 F.3d at 1365 n. 5. Accordingly, in *Interdent v. United States*, the United States was not held liable for alleged acts of patent infringement by a NAFI because the statute mandating compensation only contemplated infringement by the United States or " 'by a contractor, a subcontractor, or any person, firm, or corporation ... with the authorization or consent of the Government.' " 203 Ct.Cl. 296, 488 F.2d 1011, 1013 n. 2 (1973) (quoting 28 U.S.C. § 1498(a)). Similarly, in *Taylor v. United States*, the United States was not held liable to NAFI employees for separation pay because the relevant money-mandating provision, 5 U.S.C. § 5597(b), only referred generally to defense agencies—which includes both NAFIs and non-NAFIs—while a note to the statute indicated that separation pay must be paid out of appropriated funds—thereby excluding NAFI employees. 303 F.3d 1357, 1360–61 (Fed.Cir.2002). In *El–Sheikh v. United States*, however, the Federal Circuit found the United States liable for the actions of a NAFI under the Fair Labor Standards Act because the Act contained a provision extending coverage to any " 'nonappropriated fund instrumentality under the jurisdiction of the Armed Forces ....' " 177 F.3d 1321 (Fed.Cir.1999) (quoting 29 U.S.C. § 203(e)(2)(A)(v)).

Assuming for the sake of argument that § 5378(a) is money-mandating, it would appear to overcome the NAFI doctrine because the provision expressly refers to the "police forces of the United States Mint," and the Mint is a NAFI. We decline, therefore, to treat plaintiffs' concessions as controlling and do not base dismissal, in the alternative, on the NAFI doctrine.

## CONCLUSION

We grant defendant's motion to dismiss for lack of jurisdiction and decline plaintiffs' request at oral argument to transfer to district court. The clerk is directed to dismiss the complaint. Each side shall bear its own costs.