Joyce MATSUO; Sharon Warren; Ronald Franklin; Frank Hardt; Russell Holland; Roy Matsuo; Michael McCrary; Fred Nolke; Charles Roberts; Ronald Scherler; Roman Buyson; Peter Newman; Thomas Warren; John J. Kato; and Michael C. Shearer, on behalf of themselves and others similarly situated, Plaintiffs,

v.

The UNITED STATES, and Linda M. Springer, Director, Office of Personnel Management, Defendants.

No. 05–00398 PMP–LEK.

United States District Court, D. Hawai'i.

Feb. 21, 2006.

Gregory K. McGillivary, Woodley & McGillivary, Washington, DC, Margery S. Bronster, Bronster Crabtree & Hoshibata, Rex Y. Fujichaku, Bronster Crabtree & Hoshibata, Honolulu, HI, for Joyce K. Matsuo on behalf of herself and others similarly situated, Sharon Warren on behalf of herself and others similarly situated, Ronald Franklin on behalf of himself and others similarly situated, Frank Hardt on behalf of himself and others similarly situated, Russell Holland on behalf of himself and others similarly situated, Roy Matsuo on behalf of himself and others similarly situated, Michael McCrary on behalf of himself and others similarly situated, Fred Nolke on behalf of himself and others similarly situated, Charles Roberts on behalf of himself and others similarly situated, Ronald Scherler on behalf of himself and others similarly situated, Roman Buyson, Peter Newman, Thomas Warren, John J. Kato, Michael C. Shearer, Plaintiffs.

Harry Yee, Office of the United States Attorney, Honolulu, John W. Showalter, Department of Justice, Civil Division, Richard P. Nockett, Department of Justice, Civil Division, Washington, DC, for United States of America, Dan G. Blair Acting Director of the Office of Personnel Management, Linda M Springer Director, Personnel Management, Office of, Defendants.

### ORDER DENYING MOTION TO DISMISS OR TRANSFER

PRO, Chief Judge.

This is a proposed class action challenging the constitutionality of the Federal Employees Pay Comparability Act of 1990 ("FEPCA"), which provides locality-based comparability pay to federal employees.

Plaintiffs are former or current federal employees, some of whom have worked in Hawaii and Alaska. (First Am. Compl. (Doc. # 7) ¶¶ 1–16.) They accurately allege FEPCA applies only to federal employees within the contiguous United States, thus excluding federal employees in Hawaii and Alaska from receiving locality pay.[1] (*Id.* ¶¶ 24(a), 34.) Plaintiffs further allege that although Hawaii and Alaska federal employees receive a cost of living adjustment ("COLA") as part of their pay, Defendant United States does not include the COLA payments in calculating their retirement benefits. (*Id.* ¶ 24(c).)

Plaintiffs claim the locality pay exclusion for Hawaiian and Alaskan federal employees is based on residence and therefore unconstitutionally restricts interstate travel in violation of the equal protection clause of the Fifth Amendment to the United States Constitution (Count 1). (*Id.* ¶¶ 32–35.) Plaintiffs also claim federal employees have a property interest in their salary and FEPCA's arbitrary exclusion of Hawaiian and Alaskan federal employees from receiving locality pay and the United States' failure to include COLA payments in their retirement calculation violate substantive due process under the Fifth Amendment (Counts 2 and 3). (*Id.* ¶¶ 36–41.) Finally, Plaintiffs assert a claim under the Administrative Procedures Act ("APA"), alleging the Office of Personnel Management's ("OPM") decision not to include COLA payments as "basic pay" for retirement calculations for Alaskan and Hawaiian employees is an arbitrary and capricious interpretation of retirement statutes (Count 4). (*Id.* ¶¶ 42–43.)

Plaintiffs propose to represent two classes. The first class includes all federal employees in the contiguous United States who are entitled to locality pay under FEPCA who cannot reside in Alaska or Hawaii and work for the United States without losing locality pay. (*Id.* ¶ 23(a).) The second class consists of federal employees residing in Hawaii and Alaska who are not eligible for locality pay and do not have COLAs included in their retirement pay calculations. (*Id.* ¶ 24(b).) Plaintiffs seek declaratory and injunctive relief, damages for constitutional rights violations, and back pay under the Back Pay Act, 5 U.S.C. § 5596. (*Id.* ¶¶ 44–46.)

Presently before the Court is Defendants' Motion to Dismiss or, in the Alternative, to Transfer (Doc. # 8), filed on August 17, 2005. Plaintiffs filed an Opposition (Doc. # 13) on September 23, 2005. Defendants filed a Reply (Doc. # 24) on October 27, 2005. With leave of the Court, Plaintiffs filed a Surreply (Doc. # 26) on November 21, 2005. The Court held a hearing on this matter on January 31, 2006 (Doc. # 28).

Defendants contend this Court lacks jurisdiction because sovereign immunity bars Plaintiffs' claims unless those claims are brought under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which waives the United States' sovereign immunity for suits brought in federal district court, but only for claims under $10,000. Defendants assert a preliminary review of the named Plaintiffs' personnel records suggests fourteen of them would have back pay claims worth over $10,000 if Plaintiffs prevail. Additionally, Defendants estimate nearly half the putative class of Alaskan and Ha-

---

1. FEPCA provides that "each General Schedule position (excluding any outside the continental United States, as defined in section 5701(6)) shall be included with a pay locality." 5 U.S.C. § 5304(f)(1)(A). Section 5701(6) defines "continental United States" as "the several States and the District of Columbia, but does not include Alaska or Hawaii." 5 U.S.C. § 5701(6).

waiian federal employees also would have claims over $10,000. Defendants further argue the APA is not an applicable waiver of sovereign immunity in this case because the APA's waiver is limited to suits seeking only non-monetary relief, and does not apply where there is an alternative adequate remedy, which Defendants insist exists and is available in the form of a claim under the Tucker Act before the Court of Federal Claims.[2]

Defendants also argue venue is improper in this Court because under 28 U.S.C. § 1402, which governs suits against the United States brought under § 1346(a), venue is proper only in the judicial district in which the plaintiff resides. Here, note Defendants, only five of the named Plaintiffs reside in Hawaii and the entirety of one class proposed by Plaintiffs resides in the contiguous United States. Defendants contend this Court should transfer the action to the Court of Claims which would have jurisdiction under the Big Tucker Act, 28 U.S.C. § 1491, which would not limit the dollar amount of a plaintiff's claims, or pose the venue difficulty Defendants contend exists in this Court.

Finally, Defendants argue that Plaintiff's COLA claims must be dismissed because they are subject to exclusive review provisions in the Civil Service Retirement Act ("CSRA") and Federal Employees Retirement System Act ("FERSA").

## I. LOCALITY PAY CLAIMS

### A. Governing Law

The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction of an appeal from an interlocutory order of a district court ... granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under [28 U.S.C. § ] 1631." 28 U.S.C. § 1292(d)(4)(A); *see also Christopher Village, L.P. v. U.S.,* 360 F.3d 1319, 1328 (Fed.Cir.2004). Under § 1631, where a court finds it has no jurisdiction over an action, "the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631. Accordingly, Federal Circuit law guides this Court on the question of whether this Court or the Court of Claims has jurisdiction over this action and the Federal Circuit has exclusive jurisdiction over an appeal of this Court's Order.

### B. Jurisdiction

 The United States, as a sovereign, is immune from suit unless it has waived its immunity. *Ins. Co. of the W. v. United States,* 243 F.3d 1367, 1372 (Fed. Cir.2001). Sovereign immunity is a jurisdictional bar if the United States has not consented to be sued on a particular claim. *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998). The United States must express unequivocally its waiver of sovereign immunity, and the terms of the waiver define the court's jurisdiction. *Id.; Ins. Co. of the W.,* 243 F.3d at 1372. A party bringing an action against the United States bears the burden of demonstrating an unequivocal waiver of immunity. *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir.1993).

Defendants argue this Court has no jurisdiction over this action because the United States has not waived its sovereign immunity for Plaintiffs' claims. Defen-

---

**2.** "The Court of Federal Claims is an Article I trial court of limited jurisdiction that was created by Congress as a forum where private parties could sue the government for money claims, other than those sounding in tort, where the claims would otherwise be barred by sovereign immunity." *Kanemoto v. Reno,* 41 F.3d 641, 644 (Fed.Cir.1994).

dants argue the United States has waived its sovereign immunity for damages claims over $10,000 only if the claim is brought in the Court of Claims. Defendants contend that although Plaintiffs style their claims as equitable in nature, the claims substantively seek over $10,000 in damages from the United States. Defendants assert this Court therefore lacks jurisdiction, and the Court should transfer the case to the Court of Claims. Plaintiffs respond that their claims are primarily equitable in nature, and the United States waived sovereign immunity for claims seeking non-monetary relief under the APA. Plaintiffs contend the Claims Court does not have jurisdiction in this action because it has no power to award the declaratory or injunctive relief Plaintiffs seek.

The Tucker Act waives sovereign immunity for actions for monetary relief against the United States for claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §§ 1491(a)(1), 1346(a)(2). The Tucker Act provides three waivers of sovereign immunity: the Big Tucker Act, 28 U.S.C. § 1491; the Little Tucker Act, 28 U.S.C. § 1346(a)(2); and the Indian Tucker Act, 28 U.S.C. § 1505. *D.C. v. United States,* 67 Fed.Cl. 292, 305 n. 5 (Fed.Cl.2005). The Little Tucker Act waives sovereign immunity for actions for monetary relief against the United States brought in district court, but only if the claim does not exceed $10,000 in amount. 28 U.S.C. § 1346(a)(2). The Big Tucker Act does not contain an amount in controversy restriction but requires actions over $10,000 to be brought only in the Court of Claims. 28 U.S.C. § 1491. The Court of Claims and district courts thus share concurrent jurisdiction over monetary damages claims

against the United States up to $10,000, but where a claimant seeks more than $10,000, the claimant must sue in the Claims Court.

■■ To fall within the Tucker Act's waiver, the plaintiff's claim must be "for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (internal citation and quotations omitted). The Tucker Act does not waive sovereign immunity in suits for equitable relief against the United States because the Court of Claims does not have the power to issue general equitable relief, and it may take certain remedial actions only "as an incident of and collateral to any ... judgment." 28 U.S.C. § 1491(a)(2); *Richardson v. Morris,* 409 U.S. 464, 465–66, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) (stating the Court of Claims "has no power to grant equitable relief").

■ The APA also contains a specific waiver of the United States' sovereign immunity. *Bowen v. Massachusetts,* 487 U.S. 879, 891–92, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The APA's waiver of sovereign immunity is limited, however. *Christopher Village, L.P.,* 360 F.3d at 1327. For a district court to exercise jurisdiction over a claim under the APA, the plaintiff's claim must be for "relief other than money damages" and there must be "no other adequate remedy in a court." 5 U.S.C. §§ 702, 704; *see also Doe v. United States,* 372 F.3d 1308, 1312 (Fed.Cir.2004). A plaintiff's ability to sue the Government for money damages in the Claims Court may be an adequate remedy precluding an APA waiver of sovereign immunity in a

district court. *Christopher Village, L.P.*, 360 F.3d at 1327.

■■■■ Generally, a plaintiff "is absolute master of what jurisdiction he will appeal to," and "[j]urisdiction generally depends upon the case made and relief demanded by the plaintiff." *United States v. Mottaz*, 476 U.S. 834, 850, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) (quotation omitted). However, in determining the Court's jurisdiction under the Tucker Act and the APA, the Court must examine "the true nature of the action instead of merely relying on the plaintiff's characterization of the case."[3] *Doe*, 372 F.3d at 1315 (quotation omitted). Because of the limitations in the sovereign immunity waivers in both the Tucker Act and the APA, litigants can engage in forum shopping by the manner in which they plead their claims. The courts therefore look to the action's true nature to prevent litigants from circumventing the Claims Court's jurisdiction and thereby undermine the Tucker Act's purpose in ensuring "a central body adjudicates most claims against the United States Treasury." *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C.Cir.1995); *Consol. Edison Co. of N.Y., Inc. v. U.S., Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir.2001) (*"Con Ed."*). Conversely, the Court of Claims does not possess exclusive jurisdiction over a suit simply because the requested non-monetary relief may form the basis for a later money judgment against the Government. *See Bowen*, 487 U.S. at 904–05, 910, 108 S.Ct. 2722; *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 71 n. 15, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Doe*, 372 F.3d at 1313–14.

The parties dispute three issues affecting the Court's jurisdiction. First, the parties dispute whether the Plaintiff's claims are based on a money-mandating statute. Second, they contest whether the requested equitable relief is substantively a request for money damages. Third, they dispute whether Plaintiffs could obtain adequate relief in the Court of Claims.

### 1. Money–Mandating Source

■■■■ With respect to the money-mandating inquiry, the Tucker Act is "only a jurisdictional statute; it does not create any substantive cause of action enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Accordingly, to fall within the Tucker Act's waiver of sovereign immunity, the plaintiff must sue for money the Government improperly exacted or retained, or the plaintiff "must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967). Where the plaintiff has paid money to the Government and seeks return of all or part of that sum, "the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp.*, 372 F.2d at 1007. Where the plaintiff has not made a payment to the Government, as in the present case, the plaintiff must allege "that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum."

---

**3.** The Complaint's citation to § 1346(a) as a basis for jurisdiction is therefore immaterial. *Doe v. U.S.*, 372 F.3d 1308, 1315 (Fed.Cir. 2004) ("The fact that a party invokes the Little Tucker Act as a basis for district court jurisdiction does not mean that the court's jurisdiction is in fact based on that statute.").

**990**

*Id.* "In the parlance of Tucker Act cases, that source must be 'money-mandating.' " *Fisher,* 402 F.3d at 1172. The absence of a money-mandating source is "fatal" to the Claims Court's jurisdiction under the Tucker Act. *Id.* at 1173. Whether a regulation, statute, or constitutional provision is money-mandating is a question of law. *Id.*

A statute is "money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].' " *Id.* (quoting *Mitchell,* 463 U.S. at 216–17, 103 S.Ct. 2961). Examples of money-mandating provisions include the Military Pay Act (37 U.S.C. § 204), the General Schedule federal pay statute (5 U.S.C. § 5332); the Vaccine Act (42 U.S.C. §§ 300aa–1 to –34); military disability retirement statutes (10 U.S.C. § 1201 et seq.); the Civil Liberties Act of 1988 which provided restitution to individuals of Japanese ancestry who were interned during World War II (50 U.S.C.App. §§ 1989–1989d); the Transfer Act (24 U.S.C. § 225g) which required the United States to pay the District of Columbia for treating certain patients at District hospitals; and former 37 U.S.C. § 242 (repealed, see 76 Stat. 498 (1962)), which provided compensation to prisoners of war. *See, e.g., Bowen,* 487 U.S. at 905 n. 42, 108 S.Ct. 2722; *Fisher,* 402 F.3d at 1174–75; *Smith v. Sec'y of Army,* 384 F.3d 1288, 1294 (Fed.Cir.2004); *Kanemoto v. Reno,* 41 F.3d 641, 642–43 (Fed.Cir.1994); *Terran ex rel. Terran v. Sec'y of Health & Human Services,* 195 F.3d 1302, 1309–10 (Fed.Cir.1999); *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983); *D.C. v. United States,* 67 Fed.Cl. at 305.

Generally, constitutional provisions other than the Fifth Amendment takings clause are not money-mandating. *See, e.g., Connolly,* 716 F.2d at 887 (noting that First Amendment and Fifth Amendment due process clause, standing alone, do not mandate the payment of money); *Miller v. United States,* 67 Fed.Cl. 195, 198–99 (Fed.Cl.2005) (same for Fifth and Fourteenth Amendment due process clauses and Eighth Amendment); *Achenbach v. United States,* 56 Fed.Cl. 776, 777 n. 1 (Fed.Cl.2003) (same for the right to travel under the First Amendment, the due process clauses of the Fifth and Fourteenth Amendments, and the equal protection clause of the Fourteenth Amendment).

Plaintiffs assert they base their challenges to FEPCA on constitutional provisions, such as the Fifth Amendment's substantive due process and equal protection clauses. Plaintiffs argue those provisions of the Constitution are not money-mandating, and therefore no jurisdiction lies in the Court of Claims. Defendants argue Plaintiffs' claims actually are based on FEPCA, which they contend is a money-mandating statute. Defendants also note Plaintiffs assert claims under the Back Pay Act, a classic Tucker Act claim.

Although the Back Pay Act is a money-mandating provision, it is "derivative in application; it is not itself a jurisdictional statute." *Carroll v. United States,* 67 Fed.Cl. 82, 85 (Fed.Cl.2005) (quotation omitted). The Back Pay Act is money-mandating only when a plaintiff identifies some other applicable law, rule, or regulation the Government violated, leading to a reduction in pay. *Id.* (citing *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999)). "In sum, the [Back Pay Act], by itself, cannot be used as an exclusive basis for Tucker Act jurisdiction. There must be another legal provision, or agency decision, indicating that the pay differential was improper." *Id.*

The FEPCA is a money-mandating source. Federal pay statutes generally are money-mandating. *See Fisher,* 402 F.3d at 1174–75 (military physical disabili-

ty retirement statute); *Bobo v. United States,* 136 F.3d 1465 (Fed.Cir.1998) (Fair Labor Standards Act); *Carpenter v. United States,* 28 Fed.Cl. 195, 198 (Fed.Cl. 1993) ("The pay statutes, in conjunction with the [Back Pay Act], are the basis for entitlement to money when someone is restored to duty."); *Jackson v. United States,* 192 Ct.Cl. 765, 428 F.2d 844, 845–46 (1970) (federal basic pay statute); *Swaaley v. United States,* 180 Ct.Cl. 1, 376 F.2d 857, 858 (1967) (same). Additionally, statutes which have been considered money-mandating contain language indicating the Government "shall pay" money upon certain conditions. *See Agwiak v. United States,* 347 F.3d 1375, 1380 (Fed.Cir.2003) ("We have repeatedly recognized that the use of the word 'shall' generally makes a statute money-mandating."); *D.C. v. United States,* 67 Fed.Cl. at 305 ("When a statute states that the United States 'shall pay' compensation for a rendered service, such a statute is generally found to be money-mandating."). FEPCA states "[c]omparability payments shall be payable within each locality determined to have a pay disparity greater than 5 percent." 5 U.S.C. § 5304(a)(1). Accordingly, FEPCA is a money-mandating source.

The question, then, is whether Plaintiffs claims are based on FEPCA or the non-money-mandating constitutional provisions alleged in Plaintiffs' Complaint. The Federal Circuit has held that certain constitutional provisions, such as the ones Plaintiffs cite, cannot, *"standing alone,"* support Tucker Act jurisdiction. *Hamlet v. United States,* 873 F.2d 1414, 1416–17 (Fed.Cir.1989) (quotation omitted). However, if the alleged constitutional violation forms part of the plaintiff's claim that he has been illegally deprived of money, the claim actually is based on a money-mandating statute. *See id.* at 1416–17 (finding Claims Court erred by not considering whether a personnel manual's provisions for back pay were sufficient to support the plaintiff's monetary claim even though plaintiff based her claim on a constitutional provision which itself was not money-mandating); *Connolly,* 716 F.2d at 887 (citing *Jackson,* 192 Ct.Cl. 765, 428 F.2d 844 and *Swaaley,* 180 Ct.Cl. 1, 376 F.2d 857 as examples of constitutional claims seeking back pay under federal pay statutes falling within the Claims Court jurisdiction); *see also Kanemoto,* 41 F.3d at 646–47 (ruling the Claims Court has jurisdiction where plaintiff alleged the Justice Department's decision not to award her restitution under the Civil Liberties Act of 1988 violated equal protection and due process clauses).

For example, in *Jackson,* the plaintiff was a federal employee who alleged he was fired in violation of his First Amendment right to petition the Government. *Jackson,* 428 F.2d at 845–46. The Court of Claims concluded it had jurisdiction under the Tucker Act even though the plaintiff's back pay claim was based on a non-money-mandating provision of the Constitution. *Id.* at 846. In *Swaaley,* an honorably discharged veteran sought to recover salary he would have earned but for his alleged unlawful discharge based on his First Amendment right to petition the Government. *Swaaley,* 376 F.2d at 858. The Court of Claims exercised jurisdiction in that case even though it was based on a non-money-mandating provision of the Constitution. *Id.* As the Federal Circuit later explained, *Jackson* and *Swaaley* properly were brought in the Court of Claims because the court's jurisdiction arose "from the pay legislation pertaining to those employees and the latters' invocation of the first amendment formed part of their claims that they had been illegally deprived of their pay." *Connolly,* 716 F.2d at 887; *Walker v. United States,* 11 Cl.Ct. 77, 79–80 (1986) ("[T]he ... Federal Circuit ... has expressly determined that

jurisdiction in *Jackson* and *Swaaley* was based not on constitutional grounds, but rather on a statutory entitlement to pay provided in the basic pay statute.").

■ Plaintiffs' claims are fundamentally different from those in *Jackson, Swaaley,* and *Kanemoto,* however. The plaintiffs in those cases did not challenge the constitutionality of the pay or restitution statutes themselves, but rather challenged allegedly unconstitutional agency decisions rendering the plaintiff ineligible for pay he otherwise was entitled to and would have received under those statutes but for the allegedly unconstitutional conduct. Unlike those cases, Plaintiffs here allege FEPCA itself is unconstitutional because it excludes them from its coverage. The very crux of Plaintiffs' constitutional claims is that FEPCA as written does not mandate that the Government pay them locality pay, indeed it does the opposite. Accordingly, if Plaintiffs' claims were based on FEPCA, this source of substantive law could not fairly be interpreted as mandating compensation by the Federal Government for the damages these particular Plaintiffs have sustained because FEPCA specifically precludes payment to Plaintiffs. *See Mitchell,* 463 U.S. at 216–17, 103 S.Ct. 2961. Because FEPCA does not impose a duty to pay Plaintiffs locality pay, the Government's failure to do so does not breach FEPCA and FEPCA therefore does not mandate payment in compensation for the Government's allegedly unconstitutional conduct. *Fisher,* 402 F.3d at 1173.

Clearly Plaintiffs' claims are not based on FEPCA as a money-mandating source, but rather on the non-money-mandating constitutional provisions which Plaintiffs assert render FEPCA unconstitutional. Thus, if the Court transferred this action to the Court of Claims, it would there be dismissed for lack of jurisdiction. *See id.*

(lack of money-mandating source is "fatal" to the Claims Court jurisdiction); *Connolly,* 716 F.2d at 887 (First Amendment and Fifth Amendment due process clause are not money-mandating); *Achenbach,* 56 Fed.Cl. at 777 n. 1 (same for First Amendment, the due process clauses of the Fifth and Fourteenth Amendments, and the equal protection clause of the Fourteenth Amendment).

■ This result is even more evident with respect to the proposed class of Plaintiffs living and working for the federal government in the contiguous United States (the "CONUS" Plaintiffs). By definition, these Plaintiffs have received locality pay under FEPCA. Because these Plaintiffs have received locality pay, they are not suing to receive money owed to them based on FEPCA. Their claims are based on the non-money-mandating constitutional claim that FEPCA's exclusion of Hawaiian and Alaskan employees from locality pay impinges on the CONUS Plaintiffs' right to interstate travel. The Fifth Amendment equal protection clause is not a money-mandating provision. Accordingly, the Court finds these claims by Plaintiffs are not based on a money-mandating source.

### 2. *Relief Other Than Money Damages Under the APA*

Even if Plaintiffs' claims under the FEPCA were based on a money-mandating statute, this Court may have jurisdiction under the APA's waiver of sovereign immunity. Section 702 of the APA applies only if Plaintiffs request relief "other than money damages." The Court must examine the substance of Plaintiffs' claims to determine whether the requested relief is, essentially, a request for money damages as opposed to equitable relief. Courts have phrased this inquiry as determining the true nature, "crux," or "prime objec-

tive" of the plaintiff's claims. *See Doe*, 372 F.3d at 1313–14 (holding true nature of plaintiff's complaint seeking injunction forcing government to pay for abortion where plaintiff could not afford it was in substance equitable, even though it would force government expenditure of funds); *Wilkins v. United States*, 279 F.3d 782, 786–87 (9th Cir.2002) (holding "crux" of military chaplain's complaint was challenge to the Chaplain Corps' structure in hiring certain percentages of liturgical and non-liturgical chaplains, and injunctive relief to address changes to that structure was outside CFC's jurisdiction); *Veda, Inc. v. U.S. Dep't of the Air Force*, 111 F.3d 37, 39 (6th Cir.1997) ("The test states that if the 'prime objective' of the complaining party is simply to obtain money from the federal government, the case belongs in federal claims court."); *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 675–76 (10th Cir.1991) (court should determine whether suit's primary objective is to obtain monetary damages or equitable relief).

■ To determine whether the plaintiff's complaint seeks monetary damages rather than equitable relief, the Court must consider whether the requested equitable relief has significant prospective effect, has considerable value apart from merely determining the Government's monetary liability, or is spurious, and whether the actual relief resulting from the equitable claim would be monetary. *Kidwell*, 56 F.3d at 284 (plaintiff's complaint must request non-monetary relief that has considerable value independent of any future potential for monetary relief); *Marshall Leasing, Inc. v. U.S.*, 893 F.2d 1096, 1099 (9th Cir.1990); *Hahn v. U.S.*, 757 F.2d 581, 590 (3d Cir.1985); *see also Kester v. Campbell*, 652 F.2d 13, 15 (9th Cir.1981) ("We will not construe plaintiffs' request as one for injunctive relief when

the relief sought is substantively equivalent to a request for a monetary award.").

■ Plaintiffs' Complaint seeks (1) declarations that FEPCA's exclusion of Hawaiian and Alaskan employees from receiving locality pay is unconstitutional; (2) injunctions prohibiting the Government from continuing the disparity; (3) damages for constitutional violations, and (4) back pay under the Back Pay Act. Plaintiffs assert they are seeking primarily declaratory and injunctive relief forcing the restructuring of the pay system. Defendants respond that a declaratory judgment and injunction would, in effect, grant Plaintiffs a judgment to enforce in the Court of Claims for money damages. Defendants argue that although Plaintiffs have styled their Complaint as seeking equitable relief, Plaintiffs really are asserting claims for money damages. The Court disagrees.

Plaintiffs' Complaint substantively seeks equitable relief in the form of declaratory and injunctive relief. Because the CONUS Plaintiffs have received locality pay, the only relief they could obtain by this action would be a declaratory judgment that FEPCA's pay disparity violates their right to interstate travel, and an injunction requiring the United States to cease the pay disparity. Although Defendants suggest scenarios in which some CONUS Plaintiffs may be able to state a claim for monetary relief, the tortured factual scenarios they present demonstrate that monetary relief for the CONUS Plaintiffs under FEPCA is unlikely and, at best, a secondary result.

The Hawaiian and Alaskan Plaintiffs present a closer question, but these Plaintiffs also seek substantial equitable relief. A declaratory judgment in Plaintiffs' favor coupled with injunctive relief would require the Government to alter its conduct in the future by either doing away with

pay comparability for all employees, or including Hawaiian and Alaska employees in the pay comparability scheme. Hence, if Plaintiffs prevail, they will achieve a result with prospective value independent of any request for retroactive monetary relief by altering the Government's treatment of Hawaiian and Alaskan employees under FEPCA in the future.

Further, judgment in Plaintiffs' favor would not necessarily result in a sum certain award of monetary relief to Plaintiffs based on past conduct. FEPCA provides for locality pay only within localities with a pay disparity greater than five percent. 5 U.S.C. § 5304(a)(1). FEPCA directs the President of the United States to designate an agent to prepare annual reports comparing rates under the General Schedule with pay rates for non-Federal workers for the same work within a pay locality based on surveys prepared by the Bureau of Labor Statistics. 5 U.S.C. § 5304(d)(1). Based on the surveys, the designated agent must identify those localities in which a pay disparity exists, and make recommendations for comparability payments. *Id.* § 5304(d)(1)(B)-(C). The procedures include participation by a Federal Salary Council, which may submit its collective or individual members' views and recommendations. *Id.* § 5304(d)(1)(D), (e). The Executive Branch then must provide for or adjust comparability pay in conformity with the findings and transmit a report to Congress identifying each pay locality, specifying which pay localities have a pay disparity greater than five percent, and indicating the comparability pay. *Id.* § 5304(d)(2)-(3).

Because FEPCA has excluded Hawaiian and Alaskan employees, whether employees in these locations are even entitled to locality pay or the amount of any such locality pay is unknown. Thus, judgment in Plaintiffs' favor would not entitle them to a sum certain award. If the required survey found no pay disparity greater than five percent existed in Hawaii or Alaska, Plaintiffs would not be entitled to any money damages because they would not have been deprived of locality pay under FEPCA. Even if a disparity greater than five percent existed, determining a damage award for the amount of comparability pay these employees may be entitled to under FEPCA would not be based on known parameters in the statute. Ensuring conformity with FEPCA's procedures to determine comparability pay may require prospective injunctive relief. Because Plaintiffs' Complaint requests equitable relief with significant prospective effect of considerable value beyond monetary relief, their claims seek relief other than money damages under the APA's waiver of sovereign immunity.

### 3. Plaintiffs' Claims for Monetary Damages

 Unlike their dominant claims for equitable relief, Plaintiffs also seek relief in the form of monetary damages for constitutional violations. As to these claims, this Court lacks jurisdiction. *See Wilkins,* 279 F.3d at 785 (affirming district court's dismissal of monetary damages claims over $10,000, even though concluding district court had jurisdiction over claims seeking equitable relief). Plaintiffs have not opted to limit their request for damages to under $10,000, and thus the Little Tucker Act does not constitute a valid waiver of sovereign immunity in this Court. Further, the APA applies only to claims for relief other than money damages. A request for compensatory damages for constitutional violations does not come within the APA's waiver under § 702. Plaintiffs have not identified any other applicable waiver of sovereign immunity for this requested relief. The Court therefore will dismiss for lack of jurisdic-

tion Plaintiffs' claims for damages for alleged constitutional violations.

Additionally, the Court will dismiss Plaintiffs' claims under the Back Pay Act because the requested relief in this case would be for "money damages" as that term is used in § 702. Back pay's status as compensatory damages or specific relief is not always clear. In *Bowen,* the Supreme Court referred to reinstatement of an employee with back pay as a form of specific relief, not money damages. *Bowen,* 487 U.S. at 893, 108 S.Ct. 2722. The Supreme Court noted that sometimes specific relief comes in the form of money, but that does not convert it to "money damages," i.e., compensatory damages. *Id.* at 893–94, 108 S.Ct. 2722. "Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled. Thus, while in many instances an award of money is an award of damages, [o]ccasionally a money award is also a specie remedy." *Id.* at 895, 108 S.Ct. 2722 (internal citation, quotations, and emphasis omitted).

In the present case, however, a plain reading of the statute demonstrates that Plaintiffs are not entitled to locality pay under FEPCA. Accordingly, if Plaintiffs prevail, any monetary relief to which they may be entitled would be in the form of compensatory damages for constitutional violations. Because Plaintiffs' Back Pay Act claim seeks money damages, and Plaintiffs have not agreed to cap those damages at $10,000, this Court lacks jurisdiction to award monetary relief under the Back Pay Act.

### 4. The Court of Claims as an Alternative Adequate Remedy Under the APA

Defendants argue that even if Plaintiffs' claims call for non-monetary damages, the APA's sovereign immunity waiver still does not apply because an adequate remedy is available in the Court of Claims. Defendants argue Plaintiffs would not need a declaratory judgment or injunction because the Claims Court's judgment that the Government owes Plaintiffs for back pay would "declare" the FEPCA's exclusion of Hawaiian and Alaskan employees as unconstitutional, and res judicata would serve the same function as an injunction. Plaintiffs argue the Claims Court cannot provide an adequate remedy because it has no power to issue declaratory relief or award prospective equitable relief.

The APA's waiver of sovereign immunity has two requirements. Section 702 requires the litigant request "relief other than money damages," and § 704 requires there be no "adequate remedy" available in another court. 5 U.S.C. §§ 702, 704. "In effect, § 704 withdraws the limited waiver of immunity under § 702 if an adequate judicial remedy is already available elsewhere." *Con. Ed.,* 247 F.3d at 1383.

The Federal Circuit has considered the availability of money damages against the Government in the Court of Claims as an "adequate remedy" precluding district court jurisdiction under the APA. *See id.; Kanemoto,* 41 F.3d at 645–46. In *Con Ed,* the plaintiffs were nuclear utilities which sued the United States alleging the Energy Policy Act of 1992 ("EPACT") was unconstitutional. *Con Ed,* 247 F.3d at 1381. EPACT required the nuclear utilities to pay assessments for decontamination and decommissioning costs for uranium enrichment facilities. *Id.* at 1381–82. The utilities challenged EPACT's constitutionality on takings and due process grounds, and sought only declaratory and prospective injunctive relief. *Id.* The Government challenged the district court's jurisdiction, and moved for a transfer to the Claims

Court. *Id.* On appeal, the Federal Circuit ruled the district court below had erred by determining it had jurisdiction under the APA. *Id.* at 1382, 1384–85. The Court concluded the APA's sovereign immunity waiver did not apply because the utilities could get adequate relief in the Court of Claims. *Id.* at 1384–85. The Federal Circuit concluded a money judgment on the past payments would declare the statute's constitutionality, and res judicata principles would act as an injunction on future payments. *Id.* Of particular relevance was that the same utilities had already sued in the Court of Claims for damages, and having lost there, were engaged in forum shopping. *Id.* at 1385.

However, a "naked money judgment against the United States" will not always be an adequate substitute for relief available in a district court under the APA. *Bowen,* 487 U.S. at 905, 108 S.Ct. 2722; *see also Kanemoto,* 41 F.3d at 645 ("[B]ecause the range of relief available in the Court of Federal Claims is limited, the waiver of sovereign immunity provided under the Tucker Act will not always provide an adequate remedy in a suit against the United States."). Courts thus must evaluate whether the Claims Court's jurisdiction actually will provide the plaintiff with an adequate remedy under § 704, or if the particular facts of the case or the type of relief requested makes the Claims Court's limited ability to afford relief an inadequate forum to provide the plaintiff with a complete and meaningful remedy.

Plaintiffs do not have an adequate remedy in the Court of Claims because that court would not have jurisdiction over their claims. As discussed above, Plaintiffs' claims are not based on a money-mandating source. Lack of a money-mandating basis for the suit is "fatal" to the Claims Court's jurisdiction. *Fisher,* 402 F.3d at 1173. The Court of Claims therefore cannot provide Plaintiffs an adequate remedy because it can provide no remedy at all.

Because Plaintiffs' claims request relief other than money damages and the Court of Claims cannot provide an adequate alternative remedy, the APA's waiver of sovereign immunity applies. This Court therefore has jurisdiction over Plaintiffs' locality pay claims, and the Court will deny Defendants' motion to dismiss counts one and two.

## II. VENUE

Defendants assert venue is improper in this Court because under 28 U.S.C. § 1402, which governs suits against the United States brought under § 1346(a), venue is proper only in the judicial district in which the plaintiff resides. Here, only five of the named Plaintiffs reside in Hawaii. Additionally, the entire putative class of federal employees living in the contiguous United States would not meet § 1402's venue requirement. Plaintiffs argue § 1402 applies only if the suit is brought under § 1346(a), the Little Tucker Act. Plaintiffs argue that because they do not bring their claims under the Little Tucker Act, § 1402 does not apply. Rather, Plaintiffs argue that they bring their claims under 28 U.S.C. § 1331's general federal question jurisdiction, and § 1391(e) is the applicable venue statute rendering venue in Hawaii appropriate.

 Pursuant to § 1402(a), a civil action "in district court against the United States under subsection (a) of section 1346 . . . may be prosecuted only . . . in the judicial district where the plaintiff resides." 28 U.S.C. § 1402(a)(1). Defendants' venue argument rests upon Defendants' position that this case is brought under the Little Tucker Act. The Little Tucker Act applies only to damages claims under $10,000. Defendants themselves

note that fourteen of the fifteen named Plaintiffs and half of the putative class members would have claims over $10,000. Plaintiffs have not stipulated to cap their damages under $10,000. The Little Tucker Act does not apply, and thus neither does § 1402, as its application is restricted to claims brought under § 1346(a).

Absent a more specific venue provision, the governing venue statute for a civil action in which a defendant is an agency of the United States is 28 U.S.C. § 1391(e). *Immigrant Assistance Project of Los Angeles County Fed'n of Labor (AFL–CIO) v. I.N.S.*, 306 F.3d 842, 868 (9th Cir.2002). Pursuant to 28 U.S.C. § 1391(e):

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e). With respect to the third prong, in a multi-plaintiff suit, only one plaintiff must reside in the district for venue to be proper as to all plaintiffs. *See Sidney Coal Co., Inc. v. Soc. Sec. Admin.*, 427 F.3d 336, 343–46 (6th Cir.2005) (noting this interpretation is the "only view" federal courts have taken of the statute since enactment and listing cases); *Ry. Labor Executives' Ass'n v. I.C.C.*, 958 F.2d 252, 256 (9th Cir.1991) (noting the Court need not analyze venue as to one plaintiff under § 1391(e) where venue was satisfied by other plaintiff). Because the legislative history shows the purpose of § 1391(e) was

to ease the burden on plaintiffs attempting to bring suit against the federal government, requiring each plaintiff to reside in the district for venue purposes would undermine legislative intent. *Sidney Coal Co., Inc.*, 427 F.3d at 344–45.

 Five of the named Plaintiffs reside in Hawaii. (First Am. Compl. ¶¶ 2, 6, 8, 12, 13.) Venue in the District of Hawaii therefore is appropriate for all Plaintiffs under § 1391(e)(3). Additionally, Hawaii is a convenient forum. *See Securities Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1313 (9th Cir.1985) (venue "is intended for the convenience of the litigants"). Several of the named Plaintiffs and a substantial portion of one of the purported classes resides in Hawaii. The challenged activity's effects have been felt, among other places, in Hawaii. The Plaintiffs have chosen Hawaii as their forum. Plaintiffs all raise an identical constitutional challenge to a federal statute. Splitting their claims would waste resources and raise the potential for inconsistent judgments. Defendants have not argued Hawaii is an inconvenient venue for the proceedings, and even suggested at the hearing in this matter that if the Court of Claims took jurisdiction of the case, it may have conducted its proceedings in Hawaii. Venue therefore is appropriate in the District of Hawaii, and the Court will deny Defendants' motion to dismiss for lack of venue.

## III. COLA CLAIMS

Defendants assert that even if this Court has jurisdiction over Plaintiffs' locality pay claims, Plaintiffs' claims that COLA benefits should be calculated as part of their retirement pay must be pursued under the exclusive review provisions in the CSRA and FERSA. Plaintiffs respond that these two Acts permissively let employees pursue claims in front of the MSPB, but do not require it.

■ "The CSRA specifies the benefits to which federal employees and their survivors are entitled, and provides a reticulated remedial regime for beneficiaries to secure review—including judicial review—of benefits determinations." *Fornaro v. James*, 416 F.3d 63, 66 (D.C.Cir.2005). "This enables the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an 'unnecessary layer of judicial review' in lower federal courts, and '[e]ncourages more consistent judicial decisions ....'" *United States v. Fausto*, 484 U.S. 439, 449, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (quoting S.Rep. No. 95–969, at 52, U.S.Code Cong. & Admin. News 1978, p. 2774). Based on these considerations, many courts hold the CSRA's remedial provisions are "exclusive, and may not be supplemented by the recognition of additional rights to judicial review having their sources outside the CSRA." *Fornaro*, 416 F.3d at 66; *see also Moore v. Glickman*, 113 F.3d 988, 994 n. 7 (9th Cir.1997) (noting that employees covered by the CSRA cannot seek APA review of the MSPB's adjudication of personnel disputes because statutes place review in the Federal Circuit); *Steele v. United States*, 19 F.3d 531, 532–33 (10th Cir.1994) (CSRA preempts federal and state court actions complaining of activities the CSRA prohibits); *Veit v. Heckler*, 746 F.2d 508, 509 (9th Cir.1984) (CSRA's comprehensive remedial scheme "indicates a congressional intent to preclude judicial review except as provided for in the statute itself"). Because the CSRA sets forth a comprehensive remedial scheme providing for a uniform resolution of federal employment issues, courts have declined to allow litigants to circumvent these procedures by attempting to rely on other statutes, such as the APA. *See Rivera v. United States*, 924 F.2d 948, 950–52 (9th Cir.1991) (holding plaintiff's employment retaliation claim must be remedied through the CSRA, not the Federal Tort Claims Act); *Broadway v. Block*, 694 F.2d 979, 986 (5th Cir.1982) ("We decline to allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA."). Thus, to the extent a question falls within the MSPB's jurisdiction under the CSRA or FERSA, it is the exclusive remedy for federal employees.

The MSPB has jurisdiction over "any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a). With respect to retirement, both the CSRA and FERSA set forth the factors to be considered in computing retirement, and vest administration of the program in OPM. 5 U.S.C. §§ 8339, 8347(a), 8415, 8461(b). An individual or the United States may appeal "an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter ... to the Merit Systems Protection Board under procedures prescribed by the Board." 5 U.S.C. § 8347(d)(1); *see also id.* at § 8461(e)(1) ("an administrative action or order affecting the rights or interests of an individual or of the United States under the provisions of this chapter administered by the Office may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board"). MSPB decisions are appealable to the Federal Circuit. 5 U.S.C. § 7703(b)(1).

■ Retirement computation is a matter within OPM's administration, and exclusively reserved for appeal to the MSPB, with judicial review available in the Federal Circuit. This Court does not have jurisdiction over Plaintiffs' claims regarding the Government's failure to include COLA payments in Plaintiffs' retirement calculations because such a question would fall

within the computation of retirement, a matter within the CSRA and FERSA's exclusive review procedures. Case law uniformly describing the CSRA and FERSA's remedial schemes as the exclusive procedures for federal employees challenging issues within the CSRA and FERSA's scope contradicts Plaintiffs' argument that the statutes' use of the word "may" makes appeal to the MSPB optional rather than mandatory. The Court therefore will dismiss counts three and four of Plaintiff's Complaint for lack of jurisdiction.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or, in the Alternative, to Transfer (Doc. # 8) is GRANTED as to Counts three and four of Plaintiffs' Complaint which are hereby dismissed without prejudice for lack of jurisdiction.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss or, in the Alternative, to Transfer (Doc. # 8) is DENIED with respect to Counts one and two of Plaintiffs' Complaint.

IT IS FURTHER ORDERED that unless the parties take an appeal from this Court's Order to the United States Court of Appeals for the Federal Circuit, Defendants shall file an Answer to Plaintiffs' Complaint on or before March 22, 2006.